**Nellie MITCHELL, Plaintiff,**

v.

**GLOBE INTERNATIONAL PUBLISHING, INC. d/b/a "Sun", Defendant.**

Civ. No. 91–3001.

United States District Court,
W.D. Arkansas,
Harrison Division.

March 15, 1993.

Phillip H. McMath, McMath Law Firm, Little Rock, AR, Roy E. Danuser, Mountain Home, AR, for plaintiff.

Phillip S. Anderson, John E. Tull, Williams & Anderson, Little Rock, AR, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

In the October 2, 1990, edition of *The Sun,* a supermarket tabloid published by defendant, Globe International Publishing, Inc., a photograph of Nellie Mitchell, a 96–year–old resident of Mountain Home, Arkansas, was used to illustrate a story about "Paper Gal, Audrey Wiles" in Sterling, Australia, who had become pregnant by one of her customers, a "reclusive millionaire" she met on her newspaper route. In fact, Mrs. Mitchell made her living running a newspaper stand and delivering newspapers in Mountain Home.

She sued Globe for defamation, invasion of privacy, and intentional infliction of emotional distress, and the case was tried to a jury in Harrison, Arkansas, beginning on December 2, 1991. The jury found that the defendant's conduct had invaded Mrs. Mitchell's privacy by placing her in a false light and had amounted to an intentional infliction of emotional distress. She was awarded compensatory damages in the amount of $650,000 and punitive damages of $850,000.[1]

On appeal, a panel of the Court of Appeals for the Eighth Circuit, *Peoples Bank & Trust Co. v. Globe International, Inc.,* 978 F.2d 1065 (8th Cir.1992), affirmed as to liability and punitive damages, but remanded for a "substantial remittitur of compensatory damages" finding that the jury's award was "shockingly inflated."

This court, frankly, gave serious consideration to ordering remittitur in this case before it was appealed, but, after a great deal of deliberation, decided, for the reasons set forth in its opinion in 786 F.Supp. at 800, that any remittitur that the court ordered would

---

1. For further discussion of the facts and background see this court's opinion in *Peoples Bank & Trust Co. v. Globe International, Inc.,* 786 F.Supp. 791 (W.D.Ark.1992).

be a mere substitution of the court's judgment for that of the jury which was in at least as good a position to determine the "worth" of what *The Sun* did to Mrs. Mitchell as the court was. That is still true, but, in spite of that, it is the court's duty, as directed by the Court of Appeals, to reduce the compensatory damage award by some unspecified amount with the only guideline received from the Court of Appeals being that it should be "substantial."

The Court of Appeals said:

Though we are convinced that sufficient evidence exists to sustain a compensatory award for damage to Mitchell's reputation and her mental suffering, we also conclude the amount of the award is shocking and exaggerated.

*Peoples,* 978 F.2d at 1071.

Thus, it appears that it is this court's duty to determine, in whatever manner, what it is "worth" to Mrs. Mitchell to suffer the humiliation, embarrassment, mental suffering, and damage to her reputation caused by the egregious conduct by defendant in placing her picture and her very existence in the middle of an odious supermarket tabloid which, among other things, had a "road kill cannibal" describing his preference for human flesh from adults over that of children— he prefers adult human flesh because it is "firm, succulent and salty and doesn't require seasonings" while "children's meat is revolting because it tastes sweet and sticks to the teeth." This court still believes that the Harrison, Arkansas, jury, chosen from all walks of life, was better situated to make that decision than this court is, but, as indicated, that is beside the point, because this court has been directed to do it.

This is an especially difficult task where the damages to be awarded are based upon intangibles such as damage to reputation and mental suffering. In fact, one distinguished writer has said that:

Except in those cases in which it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, the court may not arbitrarily reduce the amount of damages, for to do so would deprive the parties of

their constitutional right to a jury. (citing cases).

11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 2815 at p. 99 (1973) (footnotes omitted).

Of course, because of the nature of the damages in this case, there are no identifiable amounts that can be deducted, so any remittitur will, by its very nature, have to be somewhat arbitrary and speculative, and the court will, of necessity, be required to, in a very real sense, substitute its judgment for that of the jury as to the "worth" of the loss of reputation and mental suffering caused to Mrs. Mitchell by the defendant.

In view of that, it might be best that this court award a new trial, or partial new trial on the issue of damages, but the court does not understand that it has authority to do so in view of the directions which it has received from the Court of Appeals in this respect. In the last sentence of the opinion the court said:

Accordingly, for the reasons set forth above, we affirm the judgment of the district court as to liability and punitive damages, and remand for a substantial remittitur of compensatory damages. (emphasis supplied)

*Id.* at 1071 (emphasis added). The mandate and judgment issued contains identical language and directed that the court order "a substantial remittitur of compensatory damages" *in accordance with the opinion of this court.* (emphasis added).

In short, this court has been directed to order a "substantial remittitur" so it must do so. For reasons stated in the earlier opinion, this court is convinced that Mrs. Mitchell suffered substantial damages to her reputation and was caused mental suffering by being a part, against her will, of a detestable publication issued and sold across the country by the defendant.

Vada Sheid, a friend of Mrs. Mitchell described the humiliation that she suffered beginning at page 156 of Vol. I of the trial transcript as follows:

And I called Nellie and told her that I had the paper, and she came to the store to see this paper, and she said, where did you get

this and how did this get into your store? ... And she says, well, that's me, but you know that I'm not pregnant. And I said, of course not.... [S]he became so disturbed and so humiliated, and she said, but what will my kids think about this? Do you think they'll believe this, and how will I ever explain it to the people in town? And then she said, I'm going to buy up all the papers there is in this town so people in Mountain Home won't know about this.

\* \* \* \* \* \*

[S]he went home, and she did not stir out for a few days.... [S]he was very depressed and humiliated, and she just didn't deliver her papers even for the following week.

\* \* \* \* \* \*

I think that Nellie has been humiliated, and I think she's been very sad about it, and she's been worried about what people say about her, and people believe that she's been involved in this, whatever this story accuses that she has. And she's been a real depressed woman. She's changed.

Tr. Transcript Vol. I, p. 156–158.

Another witness, Rebecca Baker, testified:

[N]o matter where you went, people were talking about it because, you know, this was Nellie they were talking about. And everybody recognized her as being Nellie, the newspaper lady.

\* \* \* \* \* \*

Nellie was hurt. She said, I don't know why they're doing this to me; why it was done to me. She said, I've tried not to hurt anyone ... why did they do it? ... But she was hurt, and after that, she said that people would come in and, they'd— She said they look down at my belly, and they'll say, well, Nellie, haven't you had that baby yet? Nellie, when are you going to have that baby? Nellie, you should have had that baby by now.

And she said that it bothered her.

After this happened ... she would kind of hang back and she would even back away

from Dorothy [her friend], wouldn't even get in her car....

Tr. Transcript Vol. I, p. 175–176.

Additionally, as indicated in the court's earlier opinion, Nellie's daughter, Betty, testified that Nellie "looked like she might have a stroke" (Tr. Transcript, Vol. II p. 155).

What is all that "worth"? A Harrison, Arkansas, jury believed that it was worth $650,000, but this court has been directed to reduce that award by ordering a "substantial remittitur." Obviously, there is room for disagreement as to what that means. Defendant argues that it means that Nellie Mitchell should receive no more than nominal damages, while, on the other hand, plaintiff's attorney argues that it would be "substantial" to reduce the award by one-third.

This court recognizes, and recognized from the very first, that Mrs. Mitchell did not show at the trial a great deal of outward evidence of the humiliation, anger, and disgust that many would express under the same circumstances, but the court attributed a great deal of that to her advanced age. It might very well be that a "modern person" would, either because they believed that it was "smart" to do so, or because they were more expressive, show more symptoms of the harm that was done. It might have been wise for Mrs. Mitchell to have gone to psychiatrists who would be able to testify to her damages, but she did not do so because she is from another time and that isn't her "way."

In spite of that, the court, which saw the witnesses testify, including Mrs. Mitchell, and was able to observe their demeanor, is convinced that substantial damages were suffered by her as a result of the wrongful conduct of the defendant. Admittedly, the court cannot take the evidence and point to any "specials" as lawyers call them, or any other identifiable dollar figures which can, with any certainty, justify an award of damages satisfactory to those who believe that these matters should be determined by some kind of formula. However, under all of the circumstances, the court is convinced that it is "worth" a minimum of $150,000 for Mrs. Mitchell to have been forced to endure what defendant heaped upon her, and the court,

therefore, determines that a "substantial re-mittitur" in this case, as directed by the Court of Appeals, is $500,000. A reduction of a half million dollars is certainly "substantial", and the court believes that an award of at least $150,000 in compensatory damages is justified by the evidence.

This court will deny the motion for a new trial filed herein in behalf of the defendant on the express condition that plaintiff has, within 14 days of the date of this opinion, accepted a remittitur in the amount of $500,-000. If, within such period, plaintiff has not notified the court of acceptance of a remitti-tur in such amount, the motion for a new trial will be granted, and a new trial ordered.