Howard v. Antilla                          CV-97-543-M    03/30/01
                      UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Robert Howard,
     Plaintiff

     v.                                   Civil No. 97-543-M
                                          Opinion No. 2001 DNH 045
Susan Antilla,
     Defendant


                            O R D E R


     Robert Howard brought suit to recover damages for defamation

and invasion of privacy after Susan Antilla, a reporter for The

New York Times, published an article about him on the first page

of the Times business section on Thursday, October 27, 1994.  The

headline asked, "Is Howard Really Finkelstein?  Money Rides On

It."  In the article, Antilla identified Howard as the chairman

of two publically traded companies.  She then disclosed a

circulating "rumor" that raised questions about whether Howard

was, in reality, one Howard Finkelstein, "a convicted felon who

went to jail for violations of securities laws, among other

things."  The following day, the Times published an editor's

note, conceding that no credible evidence existed to support the

alleged rumor and expressing regret that it had published the

rumor.  It also ran an article on the front page of the business section disclosing the considerable evidence that actually established the rumor's falsity.

Following trial, the jury returned a verdict in favor of defendant on Howard's defamation claim.  As to his false light/invasion of privacy claim, however, the jury found in favor of Howard and awarded him $480,000 in compensatory damages. Defendant renews her motion for judgment as a matter of law, see Fed. R. Civ. P. 50, and, in the alternative, seeks a new trial or remittitur.  See Fed. R. Civ. P. 59.  Plaintiff objects.

## Standard of Review

Under Rule 50 of the Federal Rules of Civil Procedure, a motion for judgment as a matter of law will be granted:

> only in those instances where, after having examined the evidence as well as all permissible inferences drawn therefrom in the light most favorable to non-movant, the court finds that a reasonable jury could not render a verdict in that party's favor.  In carrying out this analysis the court may not take into account the credibility of witnesses, resolve evidentiary conflicts, nor ponder the weight of the evidence introduced at trial.

2

<u>Irvine v. Murad Skin Research Labs., Inc.</u>, 194 F.3d 313, 316-17 (1st Cir.) (internal citations omitted), <u>cert.</u> <u>dismissed</u> 528 U.S. 1041 (1999).  <u>See also</u> <u>Negron v. Caleb Brett U.S.A., Inc.</u>, 212 F.3d 666, 668 (1st Cir. 2000).

Rule 59(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." Grounds for a new trial include a verdict that is against the great weight of the evidence, or a damage award that is excessive, or a verdict that is so mistaken as to constitute a miscarriage of justice, or a trial that was not fair to the moving party due to substantial errors in the admission or rejection of evidence.  <u>See</u> <u>Gasperini v. Center for Humanities, Inc.</u>, 518 U.S. 415, 433 (1996); <u>Montgomery Ward & Co. v. Duncan</u>, 311 U.S. 243, 251 (1940); <u>Transamerica Premier Ins. Co. v. Ober</u>, 107 F.3d 925, 929 (1st Cir. 1997).  But, when substantial evidence exists to support a verdict, only a very unusual case

3

will warrant the court's exercise of discretion to grant a new trial.  See Fernandez v. Corporacion Insular de Seguros, 79 F.3d 207, 211 (1st Cir. 1996).

A trial court also has discretion "to order remittitur of the award in light of the evidence adduced at trial."  Kelley v. Airborne Freight Corp., 140 F.3d 335, 355 (1st Cir. 1998).  Under the so-called "maximum recovery rule," the court may calculate the highest award supported by the evidence, and offer the prevailing party the option to accept damages in that amount or "take his chances on a new trial in the hope that a second jury might return a verdict for a higher amount."  Merchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 704 (1st Cir. 1988).  See also Liberty Mutual Ins. Co. v. Continental Casualty Co., 771 F.2d 579, 588-89 (1st Cir. 1985).

In reviewing an allegedly inconsistent verdict, this court must attempt to reconcile those inconsistencies to the extent permitted by the evidence.

> A facially inconsistent verdict in a civil action - no
> rare phenomenon - is not an automatic ground for
> vacating the verdict.  The court must attempt to

> reconcile the jury's findings, by exegesis if
> necessary, before it is free to disregard them.

Acevedo-Diaz v. Aponte, 1 F.3d 62, 74 n.15 (1st Cir. 1993) (citations and internal quotation marks omitted). See also Cantellops v. Alvaro-Chapel, 234 F.3d 741, 744 (1st Cir. 2000) ("A duty of a trial court faced with an argument that a verdict is inconsistent is to see if the seeming inconsistencies can be reconciled."). In cases involving First Amendment freedoms, however, the court must be especially vigilant to ensure that such freedoms are adequately protected. See, e.g., Veilleux v. National Broadcasting Co., 206 F.3d 92, 106 (1st Cir. 2000) ("Deference to the jury is muted, however, when free speech is implicated. In cases raising First Amendment considerations, appellate courts must conduct an independent review of the evidence on the dispositive constitutional issue.") (citations and internal quotation marks omitted).

## Discussion

I.  Judgment as a Matter of Law or New Trial.

Basically, defendant argues that the jury could not properly return a verdict in her favor as to the defamation claim but in

5

favor of plaintiff with respect to the false light claim.  Not surprisingly, defendant says the verdict is inconsistent and, as to the false light claim, lacks adequate support in the record evidence.

Defamation and false light are distinct torts, comprised of different elements.  Compare Restatement (Second) of Torts, §§ 558, et seq. (1977) with id. § 652E.  See generally Peoples Bank & Trust Co. of Mountain Home v. Globe International, Inc., 786 F. Supp. 791 (W.D. Ark. 1992).  Thus, while a plaintiff may obtain only a single recovery for injuries stemming from an actionable publication, he or she can bring claims for both false light and defamation; those claims are neither identical nor mutually exclusive.  See Restatement (Second) of Torts § 652E cmt. b.

As to the defamation claim, the court instructed the jury that, to prevail, Howard must prove six essential elements.  Of relevance to this discussion are the following:

    (d)   the article conveyed the false implication that
          plaintiff was Howard Finkelstein; and

    (e)   the implication that plaintiff was Finkelstein was
          defamatory; and

6

(f) defendant wrote the article: (1) with the intent to convey or endorse the implication that plaintiff was Finkelstein; and (2) with knowledge that plaintiff was not Finkelstein or with a reckless disregard for whether he was.

Jury Instructions at 17. The jury was also instructed that, as to the final element - "actual malice" - plaintiff bore a higher burden of proof: clear and convincing evidence. See generally New York Times Co. v. Sullivan, 376 U.S. 254 (1964). See also Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510 (1991) ("When, as here, the plaintiff is a public figure, he cannot recover unless he proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice, i.e., with 'knowledge that it was false or with reckless disregard of whether it was false or not.'") (quoting New York Times Co. v. Sullivan, supra).

With regard to plaintiff's false light claim, the court instructed the jury that Howard bore the burden of proof as to each of the following essential elements:

(a) that defendant published an article about plaintiff that placed plaintiff in a false light; and

7

> (b) the false light in which plaintiff was placed would be highly offensive to a reasonable person; and
>
> (c) defendant published the article: (1) with the intent to place plaintiff in a false light; and (2) with knowledge that the article placed plaintiff in a false light, or with reckless disregard for whether the article placed plaintiff in a false light.

Jury Instructions at 22.  And, again, consistent with the rule described in New York Times v. Sullivan, supra, and subsequent cases, including Time, Inc. v. Hill, 385 U.S. 374 (1967) (applying the "actual malice" standard to invasion of privacy claims by public figures), the court instructed the jury that, as to the final element of his false light claim, plaintiff bore the burden of proof by clear and convincing evidence.

Finally, the court informed the jury of the distinction between defamation and false light:

> In order to prevail on his claim for false light invasion of privacy, plaintiff need not prove that the article in question was defamatory.  It is enough if he proves that he was subjected to unreasonable and highly objectionable publicity that attributes to him characteristics or beliefs that are false, provided such publicity would cause serious offense in the mind of a reasonable person.

Jury Instructions at 24.  See also Restatement (Second) of Torts, § 652E cmt. b.  Defendant did not object to any of the given instructions.[1]

The jury's verdict on plaintiff's two claims is not inconsistent.  The evidence fully supported the jury's conclusion that, while defendant might not have defamed Howard (i.e., implied that he was Finkelstein, an unsavory felon convicted of securities violations), she nevertheless did present him in an actionable false light (i.e., implied that he could be Finkelstein and that some facts tended to support that proposition).  The evidence also supports the jury's conclusion that defendant either very well knew the article placed plaintiff in a false light that would be highly offensive to a reasonable

---

[1]     Defendant's sole objection to the jury instructions related to the court's definition of "clear and convincing evidence," beginning on page 14 of the instructions, and the elements of plaintiff's claims as to which that heightened burden of proof applied.  That objection was overruled, after the court concluded that the instructions accurately and understandably explained that plaintiff bore the burden of proving, by clear and convincing evidence, that defendant published the article about the rumor with actual malice; that is, with "knowledge that it was false or with reckless disregard of whether it was false or not."  New York Times Co. v. Sullivan, 376 U.S. at 280.

9

person or, at a minimum, published the article with reckless disregard for whether it placed him in a false light.

Accepting defendant's interpretation of the verdict on the defamation claim, the jury must have concluded: (1) the article did not "convey[] the false implication that plaintiff was Howard Finkelstein," Jury Instructions at 17; and/or (2) defendant did not publish the article with "actual malice" (in the First Amendment sense). Even if the jury made such findings with regard to the defamation claim, those findings are not inconsistent with the conclusion that defendant did place Howard in a false light <u>and</u> that she did so with knowledge that the article placed him in a false light or with reckless disregard for whether it did.

Fairly considered, the evidence more than adequately supports a conclusion that, while the article might not convey the impression that Howard <u>is</u> Finkelstein (defendant says her article remained "'agnostic' about the truth of the rumor"), it certainly leaves the reader with the unmistakable impression that Howard <u>could be</u> Finkelstein – that the "rumor" poses an open and

10

reasonably debatable proposition. The article goes so far as to suggest that even the federal Securities Exchange Commission had difficulty determining whether Howard was or was not Finkelstein. Consequently, the article plainly implies that whether Howard is, in reality, Finkelstein is a reasonable, and as yet unresolved, question — a factual mystery worth pondering. Based on the evidence presented at trial, however, the jury could have reasonably concluded that, at the time she published the article, defendant well knew that Howard was not, and could not have been, Finkelstein (or that she was recklessly indifferent to that fact). See, e.g., Defendant's memorandum at 18 (document no. 119) (acknowledging that, prior to publishing the article, defendant knew that Howard and Finkelstein had different birth dates, and evidence gleaned from Howard's passport showed he was not Finkelstein).

The critical point is this: when defendant published the article, the "rumor" about whether Howard was in fact Finkelstein, presented neither a reasonable question nor an unresolved (or unresolvable) mystery, based on the facts readily available to and actually known by defendant. And, the jury

11

reasonably could have concluded that, while not precisely defamatory, the article certainly held Howard out in a false light (i.e., that he <u>could be</u>, or might be, Finkelstein, and that no one could say for sure) <u>and</u> defendant published that article with "actual malice," as the term is used in <u>New York Times Co. v. Sullivan</u>.

By pointing out the existence of the supposed rumor and by actually adding credence to it by failing to disclose what she knew to be true or easily could have discovered had she not turned a blind eye - that Howard could not possibly be Finkelstein - defendant plainly held Howard out in a false light. As defendant herself acknowledges:

> An examination of the article itself demonstrates that Antilla took no position on whether the rumor was true or false. The very first sentence of the article posed the issue as a question, asking "Is Robert Howard Really Howard Finkelstein?" The article fully disclosed that the "identity confusion" was triggered by a "rumor" in the marketplace. <u>See</u> <u>Webster's Encyclopedic Unabridged Dictionary of the English Language</u> (Deluxe Edition 1994) (defining "rumor" as "a story or statement in general circulation without confirmation or certainty as to facts."). Whether the rumor was true was described as a "mystery" (defined by Webster's to mean something "unexplained or unknown").

12

Defendant's memorandum (document no. 119) at 16.

Unfortunately for defendant, the jury reasonably concluded, based on the evidence presented, that at least from her perspective, the rumor was not and should not have been presented as a "mystery." And, rather than simply reporting the existence of a false rumor, defendant actually lent some credibility to it - by suggesting that it could be or might be true or, at a minimum, that neither she nor the federal securities regulator, the SEC (an agency that surely would want to know), could say that it was decidedly false. While defendant may be correct in asserting that "liability cannot be imposed upon the press for accurately reporting the existence of allegations unless the report goes further and endorses the truth of those allegations," defendant's memorandum at 17, here, the jury could have reasonably concluded, by clear and convincing evidence, that defendant either: (1) actually knew the rumor was false; or, at best, (2) published the article with reckless indifference to whether the rumor was false. Either finding supports a verdict in favor of plaintiff as to the false light claim - one entirely consistent with the jury's verdict on the defamation claim.

Defendant's motion for judgment as a matter of law or, in the alternative, for a new trial is, therefore, denied.

## II. Remittitur.

In seeking remittitur, a defendant bears a heavy burden to show that the jury's award of non-economic damages is "grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." Havinga v. Crowley Towing and Transp. Co., 24 F.3d 1480, 1484 (1st Cir. 1994) (citation and internal quotation marks omitted). See also Consolo v. George, 58 F.3d 791, 795 (1st Cir. 1995). A jury's generosity or even extravagance, and the trial court's contrary opinion of an appropriate award had it been the fact-finder, are not grounds to overturn a jury's decision. See Dopp v. Pritzker, 38 F.3d 1239, 1249 (1st Cir. 1994) ("a reviewing court will not tinker with the jury's assessment of money damages as long as it does not fall outside the broad universe of theoretically possible awards that can be said to be supported by the evidence. This deferential standard imposes a correspondingly heavy burden on parties who challenge the amount of damages awarded by allegedly overgenerous juries.") (emphasis

14

supplied).  See also Ruiz v. Gonzalez Caraballo, 929 F.2d 31, 34 (1st Cir. 1991).

In support of her motion for remittitur, defendant points to language contained in the Supreme Court's opinion in Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974).  There, the Court noted:

> The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms.

Id. at 349.  Defendant also relies upon language found in Kassel v. Gannett Co., Inc., 875 F.2d 935, 949 (1st Cir. 1989) ("Freedom of the press requires that unbounded speculation by juries be discouraged, lest other speakers be chilled by the threat which such awards entail.").  Based upon those quoted passages, defendant seems to suggest that the court must necessarily reduce the jury's damage award, or fundamental freedoms protected by the First Amendment will be placed at substantial risk.  The court disagrees.

As the Supreme Court has observed, "the constitutional guarantees [set forth in the First Amendment] can tolerate sanctions against calculated falsehood without significant impairment of their essential function." Time, Inc. v. Hill, 385 U.S. at 389. Additionally, it is worth noting that the comment upon which defendant relies from the Court's opinion in Gertz was actually made in the broader context of a discussion concerning the inappropriateness of a punitive damages award to a non-public figure who fails to prove that a defamatory statement was made with actual malice. See Gertz, 418 U.S. at 350 ("In short, the private defamation plaintiff who establishes liability under a less demanding standard than that stated by New York Times may recover only such damages as are sufficient to compensate him for actual injury."). Here, of course, the jury concluded that plaintiff did meet his heightened burden of proof and did demonstrate that defendant acted with actual malice. Moreover, this case does not involve any punitive damages award.

It is also important to point out that, although dealing with claims raised by a non-public figure who necessarily carried a lower burden of proof, the Gertz Court ultimately concluded:

16

It is therefore appropriate to require that state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved. It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

Id. at 349-50.

Howard is plainly entitled to a reasonable damages award consistent with a reasonable assessment of the impairment of his reputation, his loss of standing in the community, embarrassment, personal humiliation, mental anguish, and subjective suffering as a result of defendant's invasive article. Nevertheless, defendant's suggestion that the substantial award returned by the jury is excessive is not unreasonable, and finds some support in reported decisions in analogous cases. In Koster v. Trans World

17

Airlines, Inc, 181 F.3d 24 (1st Cir.), cert. denied, 528 U.S. 1021 (1999), for example, the court of appeals found a jury award of $716,000 not supportable, where the award compensated emotional distress injuries fairly similar to those proven here. In Labonte v. Hutchins & Wheeler, 678 N.E.2d 853 (Mass. 1997), the court remanded an emotional distress award of $550,000 for remittitur, finding that evidence limited to depression, anxiety, and shattered confidence, was insufficient to support that amount.

And, almost nine years ago, in Peoples Bank and Trust Company of Mountain Home v. Globe International Publishing, Inc., 978 F.2d 1065 (8th Cir. 1992), a case somewhat analogous to this, the Eighth Circuit found evidence limited to testimony describing the defamation plaintiff as angry, upset, humiliated, embarrassed, depressed, and disturbed after learning of the article at issue insufficient to support a jury's "shockingly inflated" compensatory damages award of $650,000 (and its punitive damages award of $850,000). The court of appeals noted the absence of evidence concerning adverse effects on plaintiff's health, lost earnings or earning capacity, permanent injury, and

18

medical expenses.  The case was remanded with instructions to order a "substantial" remittitur, which the district court eventually set (while respectfully disagreeing) at the very substantial amount of $500,000, for an adjusted award of $150,000.  Mitchell v. Globe International Publishing, Inc., 817 F.Supp. 72 (W.D. Ark. 1993).  Perhaps a less "substantial" remittitur would have proven acceptable to the Eight Circuit, but of course these assessments and judgments, though usually cloaked in the rhetoric of objective assessment, are entirely subjective and turn more on the tender or tough mindedness of those doing the reviewing than on well understood norms.  Jurors are better than judges at evaluating pain and suffering, and, unless an emotional distress damages award is undeniably over the line it ought to be left undisturbed.

If the standard were, "what amount of money has an appellate court found to be within bounds when reviewing compensatory awards for essentially mental distress damages, absent evidence of permanent injury, medical expenses, psychiatric care, disrupted earning capacity, or other economic damages?" then, adjusting for inflation, that number probably falls somewhere

19

above $250,000 in this circuit.  That was the amount found to be the "maximum recovery" the evidence would support in Koster, supra.  But, of course, that is not a fixed standard; appellate cases provide guidance as to what amounts emotional distress evidence can reasonably sustain in like cases, but each case is sui generis, and each verdict must be assessed in light of the circumstances presented.

Here, $480,000 is a very generous award in this court's opinion – certainly higher than would have been obtained in a bench trial.  But that is not the test either.  Evaluating the "proportionality" of a damages award for emotional distress is certainly a difficult and esoteric task, undeniably subjective, and fraught with risk that judges will too quickly substitute their own personal (and "better") damages assessment for that of the jury.  This case presents a close question because, while the award is high in light of recent precedent, it is not so far above what other juries have awarded or so far above awards that have been affirmed or reset on remittitur, as to clearly call for intervention.  The circumstances here are compelling and the amount is not so disproportionate as to fairly be labeled

"grossly excessive" or "so high that it would be a denial of justice to permit it to stand," or "shocking to the conscience." See Smith v. KMART Corp., 177 F.3d 19, 30 (1st Cir. 1999); Joia v. Jo-Ja Service Corp., 817 F.2d 908, 918 (1st Cir. 1987); Segal v. Gilbert Color Systems, Inc., 746 F.2d 78, 80-81 (1st Cir. 1984).

The award does fall within the realm of other (reduced) emotional distress awards. See, e.g., Bippes v. Hershey Chocolate U.S.A., 180 F.R.D. 386 (D. Or. 1998) (reducing a jury's emotional distress damages award of $1,275,000 in a defamation case to $475,000), though, again, the standard is fairly maleable. Perhaps more importantly, the award represents the jury's considered assessment of plaintiff, his professional and personal humiliation, and embarrassment, his anxiety, distress, and the injury to his reputation occasioned by the false light into which he was put. The jurors had a full and fair opportunity to see and hear the plaintiff and his son, to evaluate the scope and nature of the suffering he experienced, and conveyed, and to bring their own common sense and life experience to bear in returning a verdict. There is no

indication that the jury failed to follow the court's instructions, and no reason to think any part of the award represents a "punishment factor" – the jury specifically awarded "zero" enhanced compensatory damages on the special verdict form, and the jurors understood that punitive damages were not allowed.

No doubt in setting the figure, the jury considered the fact that the offensive story was widely publicized throughout the world, appeared in a prominent place in a newspaper widely regarded for it's reliability (hence the greater likelihood of severe distress on Howard's part — this was no suspect tabloid after all), that the effect of the story included suspension of trading of plaintiff's companies' stock (although recovery was swift, the distress experienced was no doubt magnified by that occurrence), and that the business community in which Howard traveled was virtually instantly aware of the possibility that he might be a particularly unsavory convicted felon masquerading under an alias while heading up major, New York Stock Exchange traded corporations. Again, while the award is certainly generous, I am not persuaded that it is so "grossly excessive" or "shocking" under the circumstances that the jury's considered

judgment should be disturbed, simply because I would have awarded less.  If the award were clearly out of bounds the result would be different, but this verdict raises dust on the back edge of the chalk line.

The evidence presented to the jury at trial was legally sufficient to support the damages awarded, and defendant's motion for remittitur is also denied.

## Conclusion

For the foregoing reasons, defendant's motion for judgment as a matter of law or, in the alternative, for a new trial or remittitur (document no. 119) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 30, 2001

cc:  Charles G. Douglas, III, Esq.
     Jonathan M. Albano, Esq.
     William L. Chapman, Esq.

23