WARREN E. SPAHN, Respondent-Appellant, *v.* JULIAN MESSNER, INC., et al., Appellants-Respondents.

First Department, May 18, 1965.

*Philip Wittenberg* of counsel (*Selig J. Levitan* and *Raymond B. Harding* with him on the brief; *Wittenberg, Carrington & Farnsworth,* attorneys), for appellants-respondents.

*Earle Warren Zaidins* (*Harvey J. Michelman* with him on the brief), attorney for respondent-appellant.

BREITEL, J. P.  Plaintiff, a well-known baseball pitcher, obtained compensatory damages of $10,000 and an injunction, after trial without a jury, for invasion of his right of privacy under sections 50 and 51 of the Civil Rights Law.  The invasion consisted of an unauthorized fictionalized biography of plaintiff published for a juvenile readership.  Defendants publisher and author appeal.  They argue that the publication was privileged and one not for " advertising purposes or the purposes of trade " and therefore without the statute.  Plaintiff cross-appeals on the ground of the inadequacy of the compensatory damages and from the denial of exemplary damages and interest on the damage award.

The only significant issue is whether the publication was privileged or exempt.[1] On the damage issues there is insufficient reason to disturb the conclusions of the trial court. Compensation was properly limited to modest proportions because the offending book was a laudatory one and plaintiff had long permitted widespread exploitation of his baseball feats and fame. Exemplary damages were properly denied, at least in the exercise of discretion, because there was no reason to doubt defendants' sincerity of belief that they were privileged in their activities on the ground that the published work was a purported biography and that a biography for juveniles required special treatment. Nor is plaintiff entitled to interest on the award since it does not compensate for an external economic interest (see *De Long Corp.* v. *Morrison-Knudsen Co.*, 20 A D 2d 104, affd. 14 N Y 2d 346; Restatement, Torts, § 913). Because it is concluded that the publication was not privileged or exempt, the award for compensatory damages should be affirmed, and therefore the entire judgment should be affirmed as should the order denying the motion for exemplary damages and interest on the award.

Section 50 of the Civil Rights Law reads: "A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person * * * is guilty of a misdemeanor."

Section 51 of the Civil Rights Law, in pertinent part, reads as follows: "Any person whose name, portrait or picture is used within this State for advertising purposes or for the purposes of trade without the written consent first obtained as above provided may maintain an equitable action in the supreme court of this state against the person, firm or corporation so using his name, portrait or picture, to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use and if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by the last section, the jury, in its discretion, may award exemplary damages."

---

1. In truth, the only question is one of exemption. There are uses exempted because on no view do they involve "advertising" or "trade"; there are still others that are literally advertising or trade but for strong policy reasons have been exempted by statutory construction from the application of the statute. The latter are most often referred to as privileges. The cases, however, are not uniform in their terminology (cf. *Booth* v. *Curtis Pub. Co.*, 15 A D 2d 343, affd. 11 N Y 2d 907, *infra*; *Gautier* v. *Pro-Football*, 304 N. Y. 354, 359, *infra*; *Humiston* v. *Universal Film Mfg. Co.*, 189 App. Div. 467, 472–473, *infra*).

The statute, corrective of the common law in this State, has had a long history and has been the subject of extensive judicial elaboration (*Flores* v. *Mosler Safe Co.*, 7 N Y 2d 276, 280–283, including dissenting opinion by VAN VOORHIS, J. at pp. 285–287. See, also, Restatement, Torts, § 867, including Comments; Prosser, Torts [3d ed.], pp. 829–851, *passim;* Hofstadter and Horowitz, Right of Privacy [1954], *passim*).  Although the statute makes no express provision therefor, the courts have engrafted upon it certain privileged uses or exemptions.  Generally, the privileged uses are concerned with leaving untrammeled matters of news, history, biography, and other factual subjects of public interest despite the necessary references to the names, portraits, identities, or histories of living persons (e.g., *Gautier* v. *Pro-Football*, 304 N. Y. 354, 359–360; *Booth* v. *Curtis Pub. Co.*, 15 A D 2d 343, affd. 11 N Y 2d 907; *Dallesandro* v. *Holt & Co.*, 4 A D 2d 470; *Oma* v. *Hillman Periodicals*, 281 App. Div. 240; *Wallach* v. *Bacharach*, 192 Misc. 979, affd. 274 App. Div. 919; *Koussevitzky* v. *Allen, Towne & Heath*, 188 Misc. 479, 485 [SHIENTAG, J.], affd. 272 App. Div. 759; *Humiston* v. *Universal Film Mfg. Co.*, 189 App. Div. 467; Prosser, *op cit. supra*, pp. 844–850).

Plaintiff is concededly a public figure in the sports world and therefore it is not disputed that he and his personal history are subject to public exposure in the news, literature, and public commentaries, whether or not such exposure is for profit.  The question in this case arises because the book concerning plaintiff, although a purported biography, has been fictionalized, concededly, in order to make it suitable for a juvenile readership. Plaintiff therefore argues that the publication is not privileged and is not exempted from the statute.  Defendants stress that a biography for a juvenile readership must be fictionalized and dramatized if it is in fact to be read widely.

Thus it is conceded that use was made of imaginary incidents, manufactured dialogue and a manipulated chronology.  In short, defendants made no effort and had no intention to follow the facts concerning plaintiff's life, except in broad outline and to the extent that the facts readily supplied a dramatic portrayal attractive to the juvenile reader.  This liberty, for example, was exercised with respect to plaintiff's childhood, his relationship with his father, the courtship of his wife, important events during their marriage, and his military experience.

In *Koussevitzky* v. *Allen, Towne & Heath* (*supra*), a leading case, it was held that the statute was not applicable to a biography.  It was also held that the infiltration of inaccuracies did not defeat the privilege, and that for defamatory inaccuracies

plaintiff would be left to his remedy under the general law of defamation. Mr. Justice Shientag, in his discussion, emphasized the necessity to avoid hampering freedom of speech and of the press. He also pointed out that "all publications" are produced presumably for profit and with a view to increasing circulation, and that such a profit motive did not destroy the privilege. At the same time, however, he pointed out (p. 484): "The right of privacy statute does not apply to an unauthorized biography of a public figure unless the biography is fictional or novelized in character."

The distinction between an intentionally fictionalized treatment and a straight factual treatment (subject to inadvertent or superficial inaccuracies) was the basis for this court's holding in *Youssoupoff* v. *Columbia Broadcasting System* (19 A D 2d 865). This appears both from the memorandum of the majority and the concurring opinion of Mr. Justice Steuer, joined in by Mr. Justice Eager. The distinction was again one of the bases for this court's holding in *Hill* v. *Hayes* (18 A D 2d 485, affd. on the majority and concurring opinions below, 15 N Y 2d 986), in which Mr. Justice Stevens stressed the fictionalization and dramatization of an actual event as a factor contributing to the negation of any privilege or exemption from the statute. Mr. Justice Rabin, in a concurring opinion, said of the offending publication (p. 491): "The difficulty with the position of the defendant *Time* is that it portrayed the previous Hill incident in a highly sensational manner and represented that the play was a true version of that event. It was not. It was fictionalized and the jury so found. Consequently it violated section 51 of the Civil Rights Law". The distinction is not an entirely new one. In this State, even before the *Koussevitzky* case, *supra*, it was beginning to take form in *Binns* v. *Vitagraph Co.* (210 N. Y. 51).[2]

In the *Binns* case a dramatized re-enactment in motion picture form of an heroic experience in which plaintiff had been the participant was held to create liability in connection with the advertising and distribution of the completed picture. The court distinguished the situation from one in which a living person was photographed in an actual event, without added contrived portrayals not essential to presentation of the actual event (pp. 57–58).

The distinction or rule is a sound one and it dictates affirmance of the judgment in favor of plaintiff. Notably, the statute makes

2. For a valuable discussion of the effect of the falsity in negating the privilege of publication concerning public figures and a collection of cases not limited to this State, see Prosser, *op. cit., supra*, pp. 837–839.

no provision for any privileged uses or exemptions. Whatever privileges or exemptions have been developed in the decisional law rest on strong policy considerations and, perhaps to some extent, on constitutional guarantees of free speech and of the press. Privileges or exemptions should not be facilely extended judicially except out of the necessities of the strongest public policy or by reason of constitutional mandates. Any extension beyond is in the province of the Legislature.

It may well be, as defendants urged and, perhaps, proved, that juvenile biography requires the fillip of dramatization, imagined dialogue, manipulated chronologies, and fictionalization of events. If so, the publication of juvenile biographies of living persons, even if public figures, may only be effected with the written consent of such persons. And if it also be true, as defendants suggest, that such persons use the consent as a lever for obtaining a price for it, then it is no more than charging a price for taking liberties, otherwise unwarranted, with one's personal history. The consent and the price can be avoided by writing strictly factual biographies or by confining unauthorized biographies to those of deceased historic persons.

Actually, there is not only a matter of price involved. It is true, as it ought to be, that a public figure is subject to being exposed in a factual biography, even one which contains inadvertent or superficial inaccuracies. But surely, he should not be exposed, without his control, to biographies not limited substantially to the truth.

The fact that the fictionalized treatment is laudatory is immaterial, except perhaps as it may influence the assessment of damages, for three reasons. In the first place, a laudatory treatment may make one appear more ridiculous than a factual one, at least to those who know enough of the truth. In the second place, one may have strong feelings about not being portrayed in any exaggerated light. Lastly, there may be serious difficulties in determining what is laudatory. So long as it is not the truth, the subject of the distorted biography ought to have the right to permit or prevent its being published.

In short, the statute prohibits invasions of privacy for purposes of advertising or trade. Book publication is a trade like any other, except that its intellectual value to society is uniquely great and vital to civilization. To the extent that freedom of the press in the ultimate interest of the public's right to factual knowledge protects the publication of the factual and historical, the publication is exempt from the proscriptions of the statute. Moreover, this exemption extends to the advertising and other secondary uses of the primary news or cultural or historical

publications (see, generally, *Booth* v. *Curtis Pub. Co.*, 15 A D 2d 343, affd. 11 N Y 2d 907, *supra*). If the publication, however, by intention, purport, or format, is neither factual nor historical, the statute applies, and if the subject is a living person his written consent must be obtained.

To be sure, there may be difficulties in many cases in separating the fictionalized work from the factual work, especially if the factual work has been liberally reconstructed from available evidence, but in this case there is no such difficulty. Instead, there was unabashed fictionalization, using some factual background and the identity of plaintiff only because otherwise there would be no interest in the purchase of the book.

In the ultimate result, the publisher of the distorted biography is in no inescapable quandary. All he need do is obtain the written consent of the living person whose personal life he wishes to distort and exploit. Nor will the children who read suffer unduly if the biographies purveyed for their reading are restricted to the duller factual ones or only to the livelier ones for which the subjects, if living, have given their written consents. In any event, the deprivation to the writer, the publisher, and the children is small as compared with subjecting the public figure to the uncontrolled distortion of his personality and history, short only of defamation or an actually intentional injury to his reputation.

Accordingly, the judgment and order should be affirmed, with costs and disbursements on the judgment appeal to plaintiff against defendants and with costs and disbursements on the order appeal to defendants against plaintiff.

RABIN, McNALLY and STEVENS, JJ., concur.

Judgment and order unanimously affirmed, with costs on the judgment appeal to plaintiff against defendants and with costs and disbursements on the order appeal to defendants against plaintiff. Settle order on notice.