The **DENVER PUBLISHING COMPANY** d/b/a **Rocky Mountain News,** Petitioner,

v.

**Manuel Edward ("Eddie") BUENO, Respondent.**

No. 01SC386.

Supreme Court of Colorado, En Banc.

Sept. 16, 2002.

Rehearing Denied Oct. 7, 2002. *

---

* Chief Justice MULLARKEY, Justice MARTINEZ and Justice RICE would grant the petition.

Baker & Hostetler, LLP, Marc D. Flink, Denver, Colorado, Baker & Hostetler, LLP, Bruce W. Sanford, Bruce D. Brown, Washington, D.C., Attorneys for Petitioner.

Roger T. Castle, P.C., Roger T. Castle, Denver, Colorado, Attorneys for Respondent.

Faegre & Benson, LLP, Thomas B. Kelley, Steven D. Zansberg, Christopher P. Beall, Denver, Colorado, Amici Curiae for the Colorado Press Association; Colorado Broadcasters Association; Society of Professional Journalists and Newspaper Association of America.

Justice KOURLIS delivered the Opinion of the Court.

■ With this case we address whether Colorado permits a plaintiff to sue for the tort of false light invasion of privacy: a cause of action arising out of publicity that unreasonably places another person in a false light before the public. In *Bueno v. Denver Publishing Co.*, 32 P.3d 491 (Colo.App.2000), the court of appeals answered that question affirmatively, ruling that plaintiff Eddie Bueno's (Bueno) false light claim against the Denver Publishing Company was properly submitted to the jury. To the contrary, we now decline to recognize the tort, concluding that it is highly duplicative of defamation both in interests protected and conduct averted. Further, we find the subjective component of the false light tort raises the spectre of a chilling effect on First Amendment freedoms. We therefore reverse the court of appeals and join those jurisdictions that do not recognize false light as a viable invasion of privacy tort. We remand this case to the court of appeals for consideration of Eddie Bueno's cross-appeal of the trial court's dismissal of his defamation claim.

## I. Facts

The Denver Publishing Company, d/b/a/ Rocky Mountain News (the News), published a four-page, thirteen-column article with the bold headline: "Denver's Biggest Crime Family." Ann Carnahan, *Denver's Biggest Crime Family*, Rocky Mountain News, Aug. 28, 1994, at 20A. Bueno sued the News and Ann Carnahan, contending the story defamed him and invaded his privacy.[1] In essence, he argued that the article painted him in a false light as having criminal propensities, like many of his siblings.

The story's first page depicted a "family tree," the center of which contained a photo of Della and Pete Bueno on their wedding day in 1937. Mug-shot style photos of their eighteen children encircled the parents' photo; captions summarized each of the Bueno siblings' misdeeds, misfortunes, and, where applicable, criminal records. The caption under Bueno's photo read, "EDDIE, 55 Oldest of the Bueno children." In the first edition of the paper to be published, the caption under Bueno's youngest brother's photo read, "FREDDIE, 28 Only Bueno brother who stayed out of trouble. Living in the Midwest." Defendants changed this caption in a later edition to read, "Freddie, 28 Youngest Bueno child. Living in the Midwest." The revised version omitted the language, "Only brother to stay out of trouble." The article's first-page subtitle declared, "15 of Pete and Della Bueno's 18 children have

---

1. Bueno also alleged negligence and his wife sued for loss of consortium, but those claims were dismissed pre-trial and are not the subject of this appeal.

arrest records, making the clan Denver's biggest crime family." Some twenty-five other statements interspersed throughout the article form the basis of Bueno's claims, among them:

> Older siblings lure younger into life of crime [a headline on the article's third page].

> The older Bueno brothers are in their 40s and 50s now. They're out of prison, but most of their younger brothers will be in for a long, long time.

> Joey can't help but look at his older brothers who robbed. They're out of prison now.

> The younger brothers recall waking up many nights at 2 or 3 a.m. when their older brothers stumbled home drunk.

> Whenever the boys ended up in jail, Della Bueno bailed them out.

> "It seems like all the Buenos are destined to be nothing but criminals," David said. [David is a Bueno sibling.]

Eddie Bueno, now fifty-five, left his home when he was thirteen years old and has had virtually no contact with other family members since then. He married his present wife at age twenty-one, and they have three children, all married with families of their own. Eddie Bueno served six years in the United States Army, departing with an Honorable Discharge. His current employment began twenty-five years ago with the City and County of Denver's vehicle maintenance department. He has worked his way up to the position he now holds, center supervisor. He had no involvement whatsoever in his siblings' criminal activities, nor did he seek publicity in his life generally. Quite the contrary, Eddie Bueno purposefully kept secret from most of his friends and family the fact that he was related to the other, more notorious, Bueno children.

The reporter for the News worked on the story for six months. She interviewed numerous law enforcement officials and reviewed court and police department records. She attempted to contact all surviving children, ultimately interviewing seven of them. Three times she attempted to contact Eddie Bueno, but he did not return her calls.

Carnahan and the News insist that the article makes no false statements about Bueno. First, they argue that he did not "stay out of trouble." For this, they point to an "arrest card" in their possession that appears to indicate Bueno had a run-in with police when he was a teenager. No charges, convictions, or other ramifications resulted from that incident and Bueno disputes the card's authenticity. At trial, the judge ruled the arrest card inadmissible for any purpose, and the court of appeals affirmed.[2]

The News further points out a portion of the article it contends rectifies any possible misunderstanding vis-à-vis Eddie Bueno:

> Freddie, the youngest, and Eddie, the oldest, are the only two Bueno boys who have stayed out of trouble.

> Freddie attributes his clean record to his close relationship with his mother. Of all the boys, Eddie had the closest relationship to their father.

These sentences appear on the last page of the article, seven paragraphs from the end.

## II.   Procedural History

Bueno sued the News, asserting four causes of action, plus compensatory and punitive damages. He alleged: 1. invasion of privacy by placing him in a false light; 2. invasion of privacy by public disclosure of private facts (namely, disclosure of his photograph and identification of him as the oldest child of "Denver's biggest crime family"); 3. defamation by libel per se (false statements and characterization that Bueno had himself engaged in criminal activity); and 4. negligence (by identifying him as a member of a crime family and identifying him as someone who had engaged in crime). Before trial, the trial court granted summary judgment in favor of the News on the claims of negligence and invasion of privacy: giving publicity to private facts. On the latter claim, the court determined that the portions of the article referring to Bueno that were "true," such as

---

2. Defendants sought certiorari review of that ruling, which we declined. Accordingly, the arrest card is not in evidence because our refusal to hear the evidentiary appeal rendered final the court of appeals' affirmation of the trial court's in limine ruling. *See* C.A.R. 54.

Bueno's photo, its caption, and discussion of his dysfunctional, crime-ridden family, were not "embarrassing private facts"; rather, they were matters of "legitimate public concern." The propriety of those rulings is not before us.

At the close of evidence, the trial judge directed a verdict against Bueno on his defamation claims. As to the libel per quod claim, the court concluded that such a claim would require proof of special damages, or monetary losses resulting from the publication, not including injuries to reputation or feelings. The court found that Bueno had not submitted such proof, and thus dismissed the claim. As to the libel per se claim, the court concluded that such a claim would require proof that the publication was directed at Bueno. The court found that the publication was not "specifically directed at" the plaintiff and thus granted the motion for directed verdict on both claims. These rulings have not been reviewed on appeal. The court of appeals did not reach them, because it upheld the verdict on false light; and accordingly the propriety of the rulings is not before us.[3]

Bueno's remaining claim was for invasion of privacy by placing him before the public in a false light. That claim proceeded to the jury. The jury found for Bueno and awarded him $47,973.90 for noneconomic losses, $5,280 for economic losses, and $53,253.90 in exemplary damages. Defendants appealed[4] and Bueno conditionally cross-appealed.

We granted certiorari on the broad question of whether Colorado should recognize the tort of false light, and the narrower question of what the elements of such a tort should be if recognized.[5]

**3.** However, as we note below, Bueno did ultimately offer proof of actual damages in the false light case, and libel per se does not include a requirement that the publication be specifically directed at the plaintiff.

**4.** We acknowledge Bueno's contention that the News failed to argue before the trial judge that false light is unrecognized in Colorado. We have chosen to exercise our discretion and accept the issue as presented on appeal under the authority granted us by C.A.R. 1(d) and 49(a).

## III. Background

Samuel D. Warren and Louis D. Brandeis first recognized Invasion of Privacy as a tort in their seminal article, *The Right to Privacy*, 4 Harv. L.Rev. 193 (1890). While Warren and Brandeis first presented the right of privacy as a legal theory, it was Dean William L. Prosser who exerted primary influence over its current formulation. In a law review article published in 1960, Prosser explained,

> [Invasion of privacy] is not one tort, but a complex of four. The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied together by the common name, but otherwise have almost nothing in common except that each represents an interference with the right of the plaintiff, ... "to be let alone."

William L. Prosser, *Privacy*, 48 Cal. L.Rev. 383, 389 (1960) (citation omitted). By 1977, the drafters of the Restatement adopted Prosser's four categories:

1) unreasonable intrusion upon the seclusion of another ("intrusion");

2) publicity that unreasonably places another in a false light before the public ("false light");

3) unreasonable publicity given to another's private life ("disclosure"); and

4) appropriation of another's name or likeness ("appropriation").

Restatement (Second) of Torts § 652 A–E (1977); Prosser, *supra*, at 389. Whether to adopt these as viable tort claims is a question of state law. *See Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 809 (6th Cir.1987).

**5.** We granted certiorari on the following specific issues:

(1) Whether Colorado should recognize the tort of false light with this case, (2) Whether a publication is actionable as false light when any allegedly offensive implications it creates are refuted by statements in the report plainly to the contrary, and (3) Whether a plaintiff must prove special damages as an element of false light in Colorado, if Colorado makes false light a valid theory of recovery.

## A. Colorado law

While this court recognized the existence of invasion of privacy as a tort in 1970, *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970), we only recently embraced categories three and four. *Joe Dickerson & Assocs. v. Dittmar*, 34 P.3d 995, 1001 (Colo.2001) (appropriation); *Ozer v. Borquez*, 940 P.2d 371, 377 (Colo.1997) (disclosure). By denying certiorari in *Doe v. High–Tech Institute, Inc.*, 972 P.2d 1060 (Colo.App.1998), we allowed the first category, intrusion, to stand. Thus, three of Prosser's four invasion of privacy categories are viable tort claims in Colorado. *Id.* at 1067. ("[R]ecognition of a claim under one aspect of the privacy tort does not entail recognition of all four.").

Neither this court, nor our state legislature, has expressly adopted the second category of the tort: false light.[6] Indeed, previous to the case at bar, only one Colorado Court of Appeals case treated the elements of false light, *McCammon & Associates v. McGraw–Hill Broadcasting Co.*, 716 P.2d 490, 492 (Colo.App.1986). The claim failed on its merits.

Five other cases in our jurisdiction, including the court of appeals case in *Dittmar*, note the tort's existence but do not expressly adopt or apply it. *Borquez*, 940 P.2d at 377; *People v. Home Ins. Co.*, 197 Colo. 260, 591 P.2d 1036, 1038 n. 2 (1979); *Dittmar v. Joe Dickerson & Assocs.*, 9 P.3d 1145, 1146 (Colo. App.1999); *Doe v. High–Tech Inst., Inc.*, 972 P.2d at 1064–65, *rev'd*, 34 P.3d 995 (Colo. 2001); *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1301 (Colo.App.1998).

At the same time, four District Court cases in the Tenth Circuit employing Colorado law have applied the elements of false light, apparently assuming Colorado had adopted the tort. *Brown v. O'Bannon*, 84 F.Supp.2d 1176, 1180–81 (D.Colo.2000) (finding plaintiff failed to demonstrate sufficient "publicity" for false light claim) (citing *Doe v. High–Tech Inst., Inc.*, 972 P.2d 1060 (Colo.App.1998)); *Seidl v. Greentree Mortg. Co.*, 30 F.Supp.2d 1292, 1302 (D.Colo.1998) (applying Colorado law to determine that business entities lack standing to bring invasion of privacy false light claims); *Smith v. Colo. Interstate Gas Co.*, 777 F.Supp. 854, 857 (D.Colo.1991) (noting Colorado has not defined the parameters of its "invasion of privacy" torts but ruling that under any theory, including false light, plaintiff's claim failed). All four false light claims failed on their merits.

## B. Other States

As of this writing, thirty state courts acknowledge false light as a viable claim in their jurisdictions. *See Bueno v. Denver Publ'g Co.*, 32 P.3d 491, 495 (Colo.App.2000) (collecting twenty-seven cases).[7] Thirteen states have not expressly adopted the tort. *Id.* Several of those state courts, after examining a false light claim, decided either to reject the tort outright, *e.g.*, *Renwick v. News & Observer Publ'g Co.*, 310 N.C. 312, 312 S.E.2d 405, 410 (1984) ("We will not expand the tort of invasion of privacy . . . to include 'false light.' "), or simply noted that the facts presented did not justify recognition, *e.g.*, *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 453 N.E.2d 666, 670 (1983) ("Under the facts of the instant case, we find no rationale which compels us to adopt the 'false light' theory of recovery in Ohio at this time."). A few jurisdictions have yet to confront the issue, *e.g.*, *Riley v. Harr*, 292 F.3d 282, 298 (1st Cir.2002) (noting the uncertainty as to "whether the New Hampshire Supreme Court would recognize the false light tort").

## IV. Analysis

Tort law represents the way in which we draw lines around acceptable and unaccepta-

---

**6.** When we recognized appropriation, we noted that false light was one of the privacy invasion torts that Prosser includes. *See Joe Dickerson & Assocs. v. Dittmar*, 34 P.3d 995, 1000 (Colo. 2001).

**7.** The most recent addition, Tennessee, decided *West v. Media General Convergence, Inc.*, 53 S.W.3d 640 (Tenn.2001), after the court of appeals delivered its decision here. Idaho, South Dakota, and Maine arguably also belong in these ranks. *See Hoskins v. Howard*, 132 Idaho 311, 971 P.2d 1135 (1998) (discussing false light claim as if the state recognized the tort); *Montgomery Ward v. Shope*, 286 N.W.2d 806 (S.D. 1979) (listing with approval the four invasion of privacy torts); *Nelson v. Maine Times*, 373 A.2d 1221, 1223 (Me.1977) (recognizing the four invasions of privacy torts.).

ble non-criminal behavior in our society. Torts are designed to encourage socially beneficial conduct and deter wrongful conduct. *See, e.g.,* Restatement (Second) of Torts, § 901(c) (1979). Correspondingly, liability arises out of culpable behavior wherein the defendant breaches a duty to the plaintiff: crosses the line into unacceptable behavior. Liability not only recompenses the wronged plaintiff, but also deters the socially wrongful conduct in the first place. Hence, clarity and certainty of tort law serves a very important function in regulating how we deal with one another.

Both because it substantially overlaps with another tort, defamation, and because it is difficult to quantify, courts and legal scholars heartily debate whether false light invasion of privacy deserves a place among the recognized torts. "[F]alse light remains the least-recognized and most controversial aspect of invasion of privacy." *Cain v. Hearst Corp.,* 878 S.W.2d 577, 579 (Tex.1994) (citing Bruce W. Sanford, *Libel and Privacy,* § 11.4.1 at 567 (2d ed.1991)); *see also* Nathan E. Ray, Note, *Let There be False Light: Resisting the Growing Trend Against an Important Tort,* 84 Minn. L.Rev. 713, 716 (2000) ("[T]his Note will attempt to supply the considerations missing from these decisions [rejecting false light] and demonstrate the need for a false light tort."); J. Thomas McCarthy, *The Rights of Publicity and Privacy,* § 5.12[C], at 5–135 (1996) ("[C]ourts have yet to draw a clear and distinct line between this category of 'privacy' and that of defamation law."); Gary T. Schwartz, *Explaining and Justifying a Limited Tort of False Light Invasion of Privacy,* 41 Case W. Res. L.Rev. 885, 886 (1991) ("The current challenge to the false light doctrine is quite welcome."); Diane Leenheer Zimmerman, *False Light Invasion of Privacy: The Light That Failed,* 64 N.Y.U. L.Rev. 364, 452 (1989) ("[T]he wiser course may be for states to eliminate false light altogether.").

The primary objection courts level at false light is that it substantially overlaps with defamation, both in conduct alleged and interests protected. Additionally, to the extent it does differ from defamation, its parameters remain largely undefined. As a result, legal scholars are concerned that such an amorphous tort risks chilling fundamental First Amendment freedoms. Indeed, Prosser himself, in the very same article where he described the four invasion of privacy categories, aptly described the defamation/false light tension:

> The question may well be raised, and apparently still is unanswered, whether this branch of the tort [false light] is not capable of swallowing up and engulfing the whole law of public defamation; and whether there is any false libel printed, for example, in a newspaper, which cannot be redressed upon the alternative ground. If that turns out to be the case, it may well be asked, what of the numerous restrictions and limitations which have hedged defamation about for many years, in the interest of freedom of the press and the discouragement of trivial and extortionate claims? Are they of so little consequence that they may be circumvented in so casual and cavalier a fashion?

William L. Prosser, *Privacy,* 48 Cal. L.Rev. 383, 401 (1960).

Defamation actions may lie for published or publicly spoken statements, in the forms of defamation by libel or defamation by slander, respectively. Black's Law Dictionary 417 (6th ed.1990). We consider defamation by libel because, as does invasion of privacy by false light, this tort specifically addresses defamation by the written word. *Id.* at 417, 601. Defamation by libel may be defamatory per se when the statements are recognized as inherently injurious to reputation. *Id.* at 417. Alternatively, statements are defamatory per quod when extrinsic facts are necessary to illustrate their libelous nature by way of innuendo. *Id.* Because our principal concern with the tort of false light lies in its overlap with defamation, we now compare defamation and false light in terms of conduct and interests protected to examine whether Colorado stands to benefit from including false light among its recognized torts.

#### A. Elements

A review of the elements required for defamation by libel per se, defamation by libel

per quod, and false light invasion of privacy demonstrate the overlap among the torts: [8]

| Libel (Per Quod) | Libel (Per Se) | False Light |
|---|---|---|
| CJI–Civ.4th 22:2 | CJI–Civ.4th 22:1 | CJI–Civ.4th 28:10 |
| 1. Publication | 1. Publication | 1. Publicity |
| 2. False | 2. False | 2. False |
| 3. Reckless Disregard | 3. Reckless Disregard | 3. Reckless Disregard |
| 4. Special Damages | 4. Actual damages | 4. Actual Damages |
| 5. Defamatory | 5. Defamatory as a matter of law [9] | 5. Highly offensive to a reasonable person |
| 6. About plaintiff | | 6. About Plaintiff |

Clearly, the elements of the torts are substantially similar. Beginning with publication, we review the elements to identify any differences between the torts. One minor difference emerges under the necessary "publicity." In a libel claim, "publication" requires only that some person other than the plaintiff understand the statement; for false light, "publicity" requires communication to the public at large. *Brown v. O'Bannon*, 84 F.Supp.2d 1176, 1180–81 (D.Colo. 2000).

The element of "falsity" as set forth in the Jury Instructions varies only slightly between the torts. For libel,

A statement is false if its substance or gist is contrary to the true facts, and reasonable people learning of the statement would be likely to think significantly less favorably about the person referred to than they would if they knew the true facts. The fact that a statement may have contained some false information does not

necessarily make the substance or gist of the statement itself false.

CJI–Civ. 4th 22:11. For false light:

A statement contains false information if, considered as a whole, the substance or gist of the statement is false. The fact that a statement may have contained some false information does not necessarily make the substance or gist of the statement false.

CJI–Civ. 4th 28:11.

With regard to the mental state, reckless disregard,[10] the Jury Instructions use the same definition for either tort, located in section 22:3. An actor publishes a statement "with reckless disregard when, at the time of publication [he or she] believes that the statement is probably false or has serious doubts as to its truth." CJI–Civ. 4th 22:3; *see also Cantrell v. Forest City Publ'g Co.*, 419 U.S. 245, 249–51, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974) (discussing *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), as requiring "actual malice" in public figure false light cases to avoid First Amendment pitfalls).[11] In short, under Colo-

**8.** The Colorado Jury Instruction (CJI) based the elements of false light on those set forth in the appellate opinion in this case. CJI–Civ. 4th 28:12.

**9.** Statements recognized as defamatory as a matter of law inherently require the plaintiff to be the subject of the remark because such remarks must fall into one of four categories, each of which pertain to the plaintiff. These categories include: "(a) a criminal offense ... (b) a loathsome disease ... (c) [a] matter incompatible with his business, trade, profession, or office ... (d) serious sexual misconduct." Restatement (Second) of Torts § 570 (1977). Therefore, as we discuss later, the requirement is not a distinct and separate element in CJI but is incorporated within the fifth element, defamatory as a matter of law.

**10.** Courts frequently refer to this mens rea as "actual malice." *See, e.g., Diversified Management, Inc. v. Denver Post, Inc.*, 653 P.2d 1103, 1105 (Colo.1982) (discussing *New York Times v. Sullivan*, 376 U.S. 254, 272, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) as defining "actual malice" to mean, "with knowledge that the statement was false or with reckless disregard of whether it was false or not.").

**11.** We recognize that *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), permits state courts to adopt a simple negligence standard for private person defamation claims, and some states have chosen to do so. However, because we did not choose to lower our standard to negligence in defamation cases, see, *Diversified Mgmt. Inc.*, 653 P.2d at 1106, we certainly would not have lowered the

rado law, the requisite mens rea for both defamation and false light would be precisely the same.

On the question of damages, there is no textual difference between the "actual damages" necessary for libel per se and false light; the CJI there refers to the same section, 22:13. However, if the plaintiff is a private person, and the claim is for libel per se, the plaintiff need not prove actual damages. *Gertz v. Robert Welch*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The "special damages" essential for a libel per quod action reside at CJI–Civ. 4th 22:12.

Finally, concerning whether the statement must be "about the plaintiff," we note that the jury instructions require such a finding for libel per quod and false light, but not for libel per se. In this case, the trial court dismissed Bueno's libel per se claim because the statements "were not specifically directed at" the plaintiff. The jury instruction does not itself include a requirement that a libel per se claim need be elementally "about the plaintiff"; however, for that holding, the trial judge relied on language in *McCammon & Associates v. McGraw–Hill Broadcasting Co.*, 716 P.2d 490 (Colo.App.1986), "[t]o be libelous *per se*, the broadcast must contain a defamatory meaning specifically directed at the person claiming injury." *Id.* at 492 (citing *Inter-State Detective Bureau v. Denver Post, Inc.*, 29 Colo.App. 313, 484 P.2d 131 (1971)).[12] We take no position here as to whether the trial court, on this basis, properly directed a verdict for defendants on Bueno's libel per se claim, or whether libel per se necessarily includes an explicit element that the publication be about the plaintiff.

The Jury Instructions define "about the plaintiff," but in two different places, one for libel per quod, and one for false light. For libel, "A defamatory communication is made about the plaintiff if the recipients correctly understand, or mistakenly but reasonably understand, that it was intended to refer to the plaintiff." CJI–Civ. 4th 22:8 (citing Restatement (Second) of Torts § 564 (1977); *Keohane v. Stewart*, 882 P.2d 1293, 1300, n. 10 (Colo.1994)). For false light, "A public statement is about the plaintiff if people who (see) (hear) (read) the statement would reasonably understand that it refers to the plaintiff." CJI–Civ. 4th 28:7 (citing R. Sack, *Libel, Slander & Related Problems* § 12.4.3 (3d ed.1999); J. McCarthy, *The Rights of Publicity and Privacy* §§ 3.3[B][2] & 3.4[C] (1997)). Here again, although the definitions of these elements appear in different sections of the CJI, they are for all intents and purposes the same.

In summary, then, apart from "defamatory" versus "highly offensive," the elements of the two torts are nearly identical.

### B. Conduct

Both defamation and false light invasion of privacy seek to avert false publicity damaging to a plaintiff. With the exception of the significantly broader "publicity" required for false light, *see Brown v. O'Bannon*, 84 F.Supp.2d 1176, 1180–81 (D.Colo.2000) (noting that, under the Restatement, false light "publicity" requires communication to the public at large, while "publication" under defamation requires only one other person understand the communication), and the definitional distinction between "defamatory" and "highly offensive," the elements are identical.

Thus, it comes as no surprise when commentators generally agree that in cases in which alleged conduct will support a false light claim, the same conduct will also support a defamation claim. Even the Restatement concedes:

---

bar for false light, had we chosen to adopt it. Additionally, constitutional restraints notwithstanding, the common law development of invasion of privacy torts may by itself require the higher mental state. *See Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill.2d 411, 128 Ill. Dec. 542, 534 N.E.2d 987, 991 (1989).

**12.** For its part, *Inter-State* relies on *Lininger v. Knight*, 123 Colo. 213, 226 P.2d 809 (1951), for the "specifically directed at" language. *Inter-*

*State*, 484 P.2d at 133. *Lininger* involved a night club owner who sued an individual that had complained about the club to the board of county commissioners. *Id.* at 214–18, 226 P.2d at 809–11. A local newspaper published the letter due to a series of misunderstandings. *Id.* The court denied libel per se because the statements referred to the club, but did not specifically defame the owner, who would only be identifiable by innuendo. *Id.* at 221, 226 P.2d at 813.

In many cases to which the rule stated here [false light] applies, the publicity given to the plaintiff is defamatory, so that he would [also] have an action for libel or slander . . . . In such a case the action for invasion of privacy will afford an alternative or additional remedy, and the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity.

Restatement (Second) of Torts § 652E cmt.b (1976). *See also Sullivan v. Pulitzer Broad. Co.*, 709 S.W.2d 475, 480–81 (Mo.1986) (disallowing false light when facts amounted to nothing more than a restatement of a statutorily barred defamation claim).

In sum, the similarities far outweigh the differences between the two torts and the act of publicizing a falsity, when done with actual malice, will give rise to one or both torts. It is only with resort to the effect of the publication, i.e., the "interests protected," as will be discussed next, that a difference of significance emerges. In terms of actionable conduct, however, the two torts target substantially similar behavior.

## C.  Interests Protected

Privacy torts protect one's right "to be let alone." Thomas M. Cooley, *A Treatise on the Law of Torts*, 29 (2d ed. 1888). In false light terms, Prosser describes such "right" as "a person's interest in being let alone" in instances where there "has been publicity of a kind that is highly offensive." Prosser and Keeton, *Torts*, § 117, at 864 (5th ed.1984). "Highly offensive" is the element of false light that distinguishes it from defamation. A defamation claim requires a showing that the publication damaged the plaintiff's reputation in the community. False light requires no such showing. Rather, false light requires a showing that the publication is highly offensive, but need not have damaged that plaintiff's reputation in the community. The theory is that a publication could be highly offensive to an individual without

meeting the standard of lowering that person's reputation in the community, a standard required by defamation law. *Bolduc v. Bailey*, 586 F.Supp. 896, 900 (D.Colo.1984) ("The gravamen of an action for defamation is the damage to one's reputation in the community caused by the defamatory statement(s)."). If the statement did lower the person's reputation, it would clearly be actionable as defamation. If it did not, then, and only then, would there be a need for a false light tort that was not coextensive with defamation. In sum, defamation protects individuals from (public) offense, but only false light will serve where the offense does not lower that individual's reputation in the community.[13]

The question then is what is the nature of the interest that the tort protects? Scholars writing on false light variously describe the protected interest as "peace of mind," "injury to the inner person," "freedom from scorn and ridicule, freedom from embarrassment, humiliation and harassment, freedom from personal outrage, freedom from injury to feelings, freedom from mental anguish, freedom from contempt and disgrace, and the right to be let alone." Ray, *supra*, at 726 (citation omitted) (adding the protection of one's right to "self-determination" to the list). Lying at the core of all these "interests" are the personal feelings of the false light plaintiff. The issue is not whether others are given cause to change their perception of the plaintiff, but how the plaintiff himself responds to the publication.

Courts that recognize false light view one's reputation in the community and one's personal sense of offense as separate interests. *See Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70, 83 (1984) ("'Secondly, in defamation cases the interest sought to be protected is the objective one of reputation, . . . . In privacy cases the interest affected is the subjective one of injury to [the] inner person.'") (quoting Thomas I.

---

**13.** In this case, the jury instruction informed the jury, "To be highly offensive, the statement about the plaintiff must be such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position.

A statement about a plaintiff is highly offensive to a reasonable man only when that reasonable man would be justified in the eyes of the community in feeling seriously offended and aggrieved by the statement."

Emerson, *The Right of Privacy and Freedom of the Press*, 14 Harv. C.R.-C.L. L.Rev. 329, 333 (1979)). But even those states that accept as important the difference between these two interests, reputation and personal feelings, recognize an "affinity" between them:

> There are differing interests protected by the law of defamation and the law of privacy, which account for the substantive gradations between these torts. The interest protected by the duty not to place another in a false light is that of the individual's peace of mind, *i.e.*, his or her interest "in not being made to appear before the public in an objectionable false light or false position, or in other words, otherwise than as he is." "The action for defamation," on the other hand, "is to protect a person's interest in a good reputation ...." Nevertheless, despite analytical distinctions, there is a conceptual affinity between the causes of action based on these two theories.

*Romaine v. Kallinger*, 109 N.J. 282, 537 A.2d 284, 290 (1988) (citations omitted).

We believe that recognition of the different interests protected rests primarily on parsing a too subtle distinction between an individual's personal sensibilities and his or her reputation in the community. In fact, the United States Supreme Court trampled any such subtleties in *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). " 'The interest protected' in permitting recovery for placing the plaintiff in a false light 'is clearly that of reputation, with the same overtones of mental distress as in defamation.' " *Id.* at 573, 97 S.Ct. 2849 (quoting Prosser, *supra*, at 400.).

We agree. False statements that a plaintiff finds "highly offensive" will generally either portray that plaintiff negatively or attack his conduct or character. At the same time, publicized statements that are disparaging and false satisfy the elements of defamation. *See* Schwartz, *supra*, at 887. Thus, the same publications that defame are likely to offend, and publications that offend are

likely to defame. For example, if the article here did indeed portray Eddie Bueno as a criminal, then that statement is defamatory and not merely offensive. Those cases in which offense is taken, although no damage is done to plaintiff's reputation, are few and far between. Because the likelihood of a chilling effect is much greater than the likelihood that an offended plaintiff will be left with no cause of action, we feel that defamation law will adequately and most appropriately protect the public.

Delving into case law where a plaintiff brought false light and defamation claims further exposes the similarity between the two torts. Remarkably few instances exist where the false light claim proceeded, but defamation failed. Those that did were on atypical facts or dubious legal grounds. *See, e.g., Howard v. Antilla*, 160 F.Supp.2d 169, 171, 174–75 (D.N.H.2001) (permitting as "not inconsistent" a jury verdict for defendant on defamation claim but for plaintiff on false light claim where defendant's article identified plaintiff as the chairman of two publicly traded companies and entertained a rumor that plaintiff was actually a convicted felon who had violated securities laws); *Moore v. Sun Publ'g Corp.*, 118 N.M. 375, 881 P.2d 735 (Ct.App.1994) (ruling defamation claim failed as opinion, but false light could proceed to jury on remand where defendant's mailings portrayed plaintiff as culpable for a poor business decision).

These anomalies aside, however, there do exist scenarios where false light arguably fits, but defamation fails. *See* Schwartz, *supra*, at 893–96. Schwartz's categories are essentially two. The first involves cases where the defendant reveals intimate and personal, but false, details of plaintiff's private life, for example, portraying plaintiff as the victim of sexual harassment, *Crump*, 320 S.E.2d at 80, or as being poverty-stricken, *Cantrell v. Forest City Publ'g Co.*, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), or as having a terminal illness or suffering from depression.[14] These depictions are not nec-

---

14. These instances reveal the kinship between false light and the tort of "giving publicity to private facts": the only difference being the "private facts" in false light claims are false. *See*

Melville B. Nimmer, *The Right to Speak from Times to Time: First Amendment Theory Applied to Libel and Misapplied to Privacy*, 56 Calif. L.Rev. 935 (1968). Nimmer suggests false light

essarily defamatory, but are potentially highly offensive. The second category encompasses portrayals of the plaintiff in a *more positive* light than he deserves. *See, e.g., Spahn v. Julian Messner, Inc.*, 43 Misc.2d 219, 250 N.Y.S.2d 529, 538–40, 543 (N.Y.Sup. Ct.1964), *aff'd*, 260 N.Y.S.2d 451, 23 A.D.2d 216 (1965), *aff'd*, 18 N.Y.2d 324, 274 N.Y.S.2d 877, 221 N.E.2d 543 (1966), *vacated*, 387 U.S. 239, 87 S.Ct. 1706, 18 L.Ed.2d 744 (1967) (trial court finding invasion of privacy where plaintiff was depicted in book as a war hero who earned Bronze Star and "raced out into the teeth of the enemy barrage"—two of a multitude of characterizations that were utterly false and embarrassing to plaintiff).

We acknowledge the potential for precluding such claims, but we are convinced that those scenarios represent a decidedly narrow band of cases. If the published statement insults and disparages the plaintiff, he will quite naturally suffer shame and humiliation because those that read the falsity will view him differently, and defamation will properly lie. Colorado's defamation law compensates plaintiffs for "personal humiliation, mental anguish and suffering." CJI–Civ. 4th 22:13. If, however, the published intimate details are true, then "disclosure" is the proper cause of action. Should the publication take plaintiff's likeness and use it for pecuniary gain, the tort of appropriation provides relief. And there remains the tort of intentional infliction of emotional distress/outrageous conduct for offensive publications in which the defendant engaged in "extreme and outrageous conduct, recklessly or with the intent of causing the plaintiff severe emotional distress," provided the plaintiff actually incurs severe emotional distress as a result of the defendant's conduct. *McKelvy v. Liberty Mut. Ins. Co.*, 983 P.2d 42, 44 (Colo.App. 1998). The great majority of the scenarios proffered above would support a cause of action under one of these alternative theories. We therefore believe that the highly offended plaintiff is adequately protected by existing remedies.

### V.   Constitutional Implications

Our decision today to reject false light in Colorado reflects not only caution with respect to adopting new torts, but also our recognition that the tort implicates First Amendment principles. Freedom of the press is a critical part of our constitutional framework. We must weigh torts in this area carefully against the infringement they represent upon freedom of the press.

Although we, as readers or viewers of the news, sometimes regret excesses or empathize with individuals whose unfortunate plights are exploited, we nonetheless rely heavily upon open and full disclosure.

Because tort law is intended both to recompense wrongful conduct and to prevent it, it is important that it be clear in its identification of that wrongful conduct. The tort of false light fails that test. The sole area in which it differs from defamation is an area fraught with ambiguity and subjectivity. Recognizing "highly offensive" information, even framed within the context of what a reasonable person would find highly offensive, necessarily involves a subjective component. The publication of highly offensive material is more difficult to avoid than the publication of defamatory information that damages a person's reputation in the community. In order to prevent liability under a false light tort, the media would need to anticipate whether statements are "highly offensive" to a reasonable person of ordinary sensibilities even though their publication does no harm to the individual's reputation. To the contrary, defamatory statements are more easily recognizable by an author or publisher because such statements are those that would damage someone's reputation in the community. In other words, defamation is measured by its results; whereas false light invasion of privacy is measured by perception. It is even possible that what would be highly offensive in one location would not be in another; or what would have been highly offensive in 1962 would not be highly offensive in 2002. In other words, the standard is difficult to quantify, and shifts based

---

claims should lie in those instances where the same facts, if true, would be actionable under

"disclosure," i.e., giving publicity to private facts. *See id.*

upon the subjective perceptions of a community.

We would all hope that the press considers the impact of publicity upon the individuals involved; we would also hope that the press scrupulously avoids the publication of any false material. However, defamation law adequately proscribes inappropriate conduct in this area and punishes breach with relative clarity and certainty. We are comfortable that existing law adequately protects us from false publications, from cavalier reporting, or from malice.

Conversely, in the limited area in which false light invasion of privacy and defamation are not coextensive, there is ambiguity and subjectivity that would invariably chill open and robust reporting. We purposefully avoid upsetting "the delicate balance that has developed in the law of defamation between the protection of an individual's interest in redressing injury from published falsehoods, and the protection of society's interest in vigorous debate and free dissemination of the news." *Fellows v. Nat'l Enquirer, Inc.*, 42 Cal.3d 234, 228 Cal.Rptr. 215, 721 P.2d 97, 106 (1986).

### VI. Conclusion

Our holding today is a deliberate exercise of caution. We believe false light is too amorphous a tort for Colorado, and it risks inflicting an unacceptable chill on those in the media seeking to avoid liability. The Supreme Court of Texas, in rejecting false light invasion of privacy, observed:

"[w]hatever is added to the field of libel is taken from the field of free debate." While less compelling, these same considerations are also at play in private, nonpolitical expression. Thus, the defamation action has been narrowly tailored to limit free speech as little as possible.

*Cain v. Hearst Corp.*, 878 S.W.2d 577, 582 (Tex.1994) (quoting *New York Times v. Sullivan*, 376 U.S. 254, 272, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (quoting *Sweeney v. Patterson*, 128 F.2d 457, 458 (1942))). Such tailoring has yet to develop in the nascent

false light tort, and we are not inclined to become the workshop. When we "take from the field of free debate," we should at the very least know what and how much we are taking. Absent that, we find no benefit to our jurisprudence by adopting the tort of false light invasion of privacy. The tort applies only to a narrow band of cases such that any potential gain in individual protection is offset by the chilling effect the new, undefined tort could have on speech.

Finally, we note that the Colorado General Assembly retains full authority to promulgate statutory causes of action of the type we here reject. Should they deem this decision overly cautious, they are, of course, free to legislate a remedy. Therefore, the court of appeals judgment is reversed and the case is remanded for consideration by that court of Eddie Bueno's cross appeal.[15]

Chief Justice MULLARKEY dissents, and Justice MARTINEZ and Justice RICE join in the dissent.

Chief Justice MULLARKEY, dissenting:

I respectfully dissent because I believe the majority opinion fails to sufficiently justify its decision to eliminate the tort of false light invasion of privacy from this jurisdiction.

By refusing to formally recognize the tort of false light invasion of privacy, the court today narrows privacy protections in Colorado and closes an independent avenue of relief available to plaintiffs in thirty other states. *See* maj. op. at 897 n. 7; *Bueno v. Denver Publ'g. Co.*, 32 P.3d 491, 495 (Colo.App.2000). In so holding, the court deprives plaintiffs of a tort that effectively has been recognized in this jurisdiction for many years. As for the immediate ramifications of this decision, the court precludes Plaintiff Eddie Bueno from recovering under his false light claim for harm caused to him by a Rocky Mountain News article, sending him back to the court of appeals with the burden of resurrecting his defamation arguments.

---

**15.** Plaintiff's conditional cross-appeal, left unaddressed when the court of appeals affirmed the

trial court, is now suitable for review.

Today's majority opinion offers two primary rationales for its decision to reject the false light tort and to restrict the privacy protections available in this state. First, the court reasons that false light duplicates defamation in several respects and is therefore an unnecessary claim. *See* maj. op. at 894. Second, the court asserts that the tort might have a chilling effect on First Amendment freedoms. *Id.*

In my view, these arguments are not persuasive. First, the mere overlap of some false light and defamation elements does not warrant a complete foreclosure of an independent false light claim. A better solution to overlap is simply to preclude duplicative damages awards. Second, false light offers the same First Amendment protections that defamation provides, therefore false light will not chill First Amendment freedoms. Third, today's decision needlessly places Colorado at odds with a clear majority rule, and the application of the majority's analysis to Bueno's case leads to an unfairly burdensome result.

## I. Facts

Eddie Bueno, now in his sixties, left home at age 13 to escape a troubled family. He found work, attended school, and eventually married and raised a family. During those years, Bueno did all he could to separate himself from his brothers and sisters, and had virtually no contact with his parents or siblings. He lived a law abiding life, and was never involved in his siblings' criminal activities.

One can only imagine Eddie Bueno's reaction when he picked up the Rocky Mountain News on Sunday, August 28, 1994, to see the front page, one-inch, bold-print banner headline: "Denver's Biggest Crime Family." The smaller sub-headline read: "15 of 18 Bueno Siblings Have Arrest Records, Including 2 Known as Society Bandits." *See* Ann Carnahan, *Denver's Biggest Crime Family,* Rocky Mountain News, Aug. 28, 1994, at 1A. Inside the tabloid newspaper, the Bueno story took four full pages. *See id.* at 20A–24A. The first page of the article depicted a full-page Bueno family tree, featuring photographs of each of the siblings surrounding the parents'

wedding picture. *See id.* at 20A. Front and center at the top of the tree, directly under the one-inch heading "Denver's Biggest Crime Family," was a photograph of Eddie himself, labeled simply as "EDDIE, 55, the oldest of the Bueno children." *Id.* The following thirteen-column article provided extensive detail of various criminal activity within the Bueno family, including over twenty-five statements and headings forming the basis of Bueno's lawsuit, among them: "Older Siblings Lure Younger Into Life of Crime." *See id.* at 22A.

Eddie Bueno sued the newspaper for defamation and for invading his privacy by portraying him in a false light as having the same criminal propensities as his siblings. At trial, the court granted the newspaper's directed verdict on Bueno's defamation claim but allowed the false light claim to go to the jury. The jury returned a verdict in favor of Bueno on the false light claim, awarding him $53,253.90 in economic and non-economic losses, as well as $53,253.00 in exemplary damages. The court of appeals affirmed. Today, the majority opinion invalidates this award by refusing to recognize the viability of false light invasion of privacy in Colorado.

## II. Overlap Does Not Justify the Elimination of False Light

First, the court reasons that false light overlaps with defamation in both the interests protected and the conduct averted, and is therefore an unnecessary claim. *See* maj. op. at 894. Here, I do not agree that the best solution to overlapping torts is the wholesale elimination of one of the claims. The majority opinion begins its analysis by providing a lengthy comparison of the similarities and differences between false light and defamation, rightly finding that the two torts are not exact duplicates. *See id.* at 898–911. The majority concedes that scenarios exist "where false light arguably fits, but defamation fails," *id.* at 902, because while false light focuses on publications "highly offensive" to a reasonable person, defamation targets only publications that lower the plaintiff's reputation in the community. *See id.* at 901. Despite this imperfect fit between false light and defamation, the court nevertheless de-

cides that the two torts are sufficiently similar to justify the elimination of a false light remedy for the leftover "narrow band of cases." *See id.* at 902.

My main concern with the majority's approach is not with its comparison of false light and defamation, but with its decision to "solve" the overlap by foreclosing the false light tort entirely. In my opinion, a better solution would be to restrict the damages available to plaintiffs raising both false light and defamation claims, thus preventing duplicative damages awards. The Restatement (Second) of Torts encourages this approach, stating that where more than one privacy claim is based on a single publication, the injured party may "have only one recovery of his damages upon one or all of the different grounds." Restatement (Second) of Torts § 652A cmt. d (1977).

Such a solution is not novel—courts are well versed at preventing duplicate awards while simultaneously providing plaintiffs with multiple avenues of relief. For example, a plaintiff with a products liability complaint may choose among several causes of action, including a claim for negligence, strict liability, a breach of express or implied warranty, or a combination of the above. *See, e.g., Palmer v. A.H. Robins Co.*, 684 P.2d 187, 198 (Colo.1984) (involving all of the above actions simultaneously). Therefore, the mere similarity between false light and defamation does not justify the complete rejection of the false light tort. *See also Cain v. Hearst Corp.*, 878 S.W.2d 577, 588 (Tex.1994) (Hightower, J., dissenting) (arguing in a 5–4 dissent that plaintiffs often have a choice between similar claims for relief, and that "overlap, by itself, is no reason to reject a cause of action for false light invasion of privacy").

### III. False Light Adequately Protects First Amendment Freedoms

In order to justify the preclusion of claims that fall under only the false light tort, the majority opinion explains that First Amendment concerns outweigh the need to provide an independent false light remedy. *See* maj. op. at 902–903. At the outset, I disagree with the majority's conclusion that false light is particularly threatening to First Amendment freedoms due to its "subjective component." *See id.* at 903. The majority attempts to distinguish false light from defamation by noting that "defamation is measured by its results; whereas false light invasion of privacy is measured by perception." *Id.* at 903. I do not see a meaningful difference between the level of objectivity of these two tests. In my view, neither standard is easily quantifiable and neither standard can be measured without some consideration of the geographic or temporal context of the statement in question. Therefore, the objective false light standard is no more threatening to First Amendment rights than the objective defamation standard.

Furthermore, the identical "actual malice" standard protects First Amendment freedoms in both defamation and false light cases,[1] and this court can easily apply the full range of other constitutional protections afforded to defamation cases to false light invasion of privacy cases. *See, e.g., Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 135 (2d Cir.1984) (applying the same constitutional protections to both libel and false light cases). Under these constitutional protections, false light does not pose any unusual threat to First Amendment freedoms.

### IV. The Majority's Analysis in Rejecting False Light Has Negative Ramifications Both Generally and As Applied to Bueno

#### A. General Ramifications

I must first emphasize the national context in which today's decision takes place. The majority opinion leaves Colorado at odds with the United States Supreme Court[2] and a clear majority of states that recognize the

---

**1.** The majority concedes that "under Colorado law, the requisite mens rea for both defamation and false light would be precisely the same." Maj. op. at 899.

**2.** The U.S. Supreme Court acknowledged the tort of false light invasion of privacy in *Time, Inc. v.*

*Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), and *Cantrell v. Forest City Publ'g Co.*, 419 U.S. 245, 249, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974).

false light tort, joining only three states that explicitly reject the tort in its entirety. *See Cain,* 878 S.W.2d at 579; *Lake v. Wal–Mart Stores, Inc.,* 582 N.W.2d 231, 235–36 (Minn. 1998); *Renwick v. News & Observer Publ'g. Co.,* 310 N.C. 312, 312 S.E.2d 405, 413 (1984). We depart from the majority rule despite our recent acknowledgement that we traditionally rely upon majority jurisdictions with respect to invasion of privacy torts. *See Dickerson & Assoc. v. Dittmar,* 34 P.3d 995, 1001 (Colo.2001). Furthermore, no modern trend explains today's decision—Tennessee, the most recent state before Colorado to consider this debate in light of current cases and commentary, explicitly embraced the majority rule just last year, recognizing false light as a viable and independent tort. *West v. Media Gen. Convergence, Inc.,* 53 S.W.3d 640, 648 (Tenn.2001).

I also note that although the majority opinion claims that its decision reflects "caution with respect to adopting new torts," maj. op. at 903, the decision is more accurately described as one that deprives plaintiffs of a tort that is already, in effect, recognized in this state. While it is true that this court never explicitly adopted false light in the past, we have made consistent references to its existence. *See People v. Home Ins. Co.,* 197 Colo. 260, 263 n. 2, 591 P.2d 1036, 1038 n. 2 (Colo.1979) (referring to the "four distinct kinds of invasion [of privacy]" set forth in the Restatement (2d) of Torts); *see also Ozer v. Borquez,* 940 P.2d 371, 377 (Colo.1997); *Dittmar,* 34 P.3d at 1000. Furthermore, in *McCammon & Associates, Inc. v. McGraw–Hill Broadcasting Co.,* 716 P.2d 490, 492 (Colo.App.1986), the court of appeals expressly recognized false light and defined its elements.

Due to the uncritical manner in which both this court and the court of appeals have treated the false light tort over the past twenty years, even the United States District Court for the district of Colorado has been led to conclude that false light is viable under Colorado law. *See Brown v. O'Bannon,* 84 F.Supp.2d 1176, 1180 (D.Colo.2000); *Seidl v. Greentree Mortg. Co.,* 30 F.Supp.2d 1292, 1302 (D.Colo.1998); *Smith v. Colorado Inter-*

state Gas Co., 777 F.Supp. 854, 857 (D.Colo. 1991). Clearly, Eddie Bueno and other plaintiffs who have raised false light claims in Colorado have been reasonable in relying on the impression that the false light tort is actionable in this state. Today's decision punishes that reasonable reliance.

### B. Ramifications As Applied to Bueno

The majority's analysis reaches an unfairly burdensome result. The trial court directed a verdict against Bueno on his defamation claim[3] but allowed his false light claim to go to the jury. The jury found for Bueno and awarded him $53,253.90 in economic and non-economic losses, as well as $53,253.00 in exemplary damages. In its opinion today, the majority sets aside the verdict and remands the case to the court of appeals to consider Bueno's contention that the trial court erred when it threw out his defamation claim.

The heart of the majority's decision is actually found in a short but extraordinarily significant footnote. *See* maj. op. at 896 n. 3. In footnote 3, the majority holds, without discussion, that the defamation claim of libel per se "does not include a requirement that the publication be specifically directed at the plaintiff." *Id.* Conveniently enough, Bueno's original libel per se claim was dismissed by the trial court precisely because the trial judge determined the Rocky Mountain News article was not "specifically directed at" the plaintiff. This single footnote essentially decides Bueno's defamation case today, and yet the majority refuses to explicitly acknowledge this result. Instead, the majority now requires Bueno to go back to the court of appeals and either persuade the court of appeals that footnote 3 is not mere dicta or litigate the issue.

If, as the majority concludes, the tort of false light essentially is the tort of defamation in both the conduct alleged and the interests protected, *see id.* at 900–906, it should simply order the damages awarded for Bueno's recovery on false light to be paid to him as damages for defamation. The false light jury instructions given in this case were adequate in substance for a defamation

---

**3.** The defamation ruling has not yet been reviewed on appeal.

claim,[4] and damages certainly would not be duplicated by upholding Bueno's current award.

The only reason that would justify the majority's remand remedy would be that Bueno's claim is one of those rare instances the majority identifies that would be actionable under false light but not under defamation. If this is true, we should say so. If Bueno's case is in that "narrow band of cases" the majority opinion precludes today, *see id.* at 902, it is not reasonable to send Eddie Bueno back to the court of appeals or the trial court in search of an illusory goal.

To me, this case is exactly the type of situation that calls out for the protection afforded by the tort of false light invasion of privacy. Bueno was portrayed as something he was not—a criminal—and his efforts to protect his privacy were destroyed. When Samuel D. Warren and Louis D. Brandeis first proposed the right of privacy,[5] they tapped into a concept that has become increasingly more important in succeeding years. Although Warren and Brandeis could not have predicted the scope of today's information explosion and the abuses arising from it, they would immediately recognize what happened to Eddie Bueno. Bueno lost his privacy because a newspaper published a sensational story wrongly including him in the caste of criminals. The court's refusal today to recognize false light not only narrows privacy protections in Colorado and contradicts a national majority rule, but also deprives Eddie Bueno of the rather modest compensation he won and sends him back into more litigation with a vastly better funded foe.

## V. Conclusion

Because the majority rejects the tort of false light invasion of privacy without sufficient justification, I cannot agree with the court's decision to eliminate the false light tort. Therefore, I would hold that the court

of appeals properly upheld the plaintiff's false light claim.

For the above reasons, I respectfully dissent.

I am authorized to state that Justice MARTINEZ and Justice RICE join in this dissent.

---

4. The elements of defamation (libel per se and libel per quod) are listed in CJI–Civ.4th 22:1–2, and see CJI–Civ.4th 28:10 for the elements of false light, which were based on the elements detailed in the appellate opinion in this case. *See also* maj. op. at 899 (providing a comparative chart of the elements for defamation and false light, based on the Colorado Jury Instructions).

5. Louis D. Brandeis & Samuel D. Warren, *The Right to Privacy,* 4 Harv. L.Rev. 193 (1890).