The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 16, 2019

## 2019COA77

**No. 18CA0741, *West Colo. Motors v. General Motors* — Courts and Court Procedure — Limitation of Actions — Commencement of New Action Upon Involuntary Dismissal — Remedial Revival Statute**

A division of the court of appeals considers whether Colorado's

remedial revival statute, section 13-80-111, C.R.S. 2018, which

tolls the applicable statute of limitations when the original action

has been terminated for lack of jurisdiction, may be used to revive a

nonjusticiable claim. The division concludes that because section

13-80-111 is not itself a source of subject matter jurisdiction, and

because it only contemplates revival of an otherwise untimely

lawsuit in instances where the previous dismissal for lack of subject

matter jurisdiction has arisen from a curable defect, section 13-80-111 cannot be employed to revive a nonjusticiable claim.

The division further concludes that section 13-80-111(1) requires a plaintiff to act diligently to revive a claim and that for a new complaint to qualify as a "new action upon the same cause of action" the initial lawsuit must have provided timely notice to the defendant that the plaintiff had a present purpose to maintain the plaintiff's rights before the courts.

Accordingly, the division affirms the holding of the district court.

COLORADO COURT OF APPEALS 2019COA77

Court of Appeals No. 18CA0741
Douglas County District Court No. 17CV30861
Honorable Paul A. King, Judge

West Colorado Motors, LLC, d/b/a Autonation Buick GMC Park Meadows,

Plaintiff-Appellant,

v.

General Motors, LLC,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE GROVE
Terry, J., concurs
J. Jones, J., specially concurs

Announced May 16, 2019

Ballard Spahr LLP, Patrick G. Compton, Denver, Colorado, Williams & Connolly
LLP, Daniel F. Katz, Juli Ann Lund, Washington, DC, for Plaintiff-Appellant

Nelson Mullins Riley & Scarborough LLP, Mark T. Clouatre, Jacob F. Fischer,
Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiff West Colorado Motors, LLC, d/b/a Autonation Buick GMC Park Meadows (Park Meadows), appeals the district court's order dismissing its complaint against defendant, General Motors, LLC (GM), as barred by the statute of limitations. We affirm.

## I.    Background

¶ 2    This is the second appearance before this court of a long-running dispute between Park Meadows and GM concerning GM's approval of the relocation of another dealership (Alpine) into what Park Meadows asserts is its territory. In the first case, after unsuccessfully protesting Alpine's proposed relocation with the Executive Director of the Colorado Department of Revenue — who, in a letter to Park Meadows, said that she was declining to investigate or hold a hearing on the matter — Park Meadows filed suit against GM, Alpine, and the Executive Director in Denver District Court. *See W. Colo. Motors, LLC v. Gen. Motors, LLC*, 2016 COA 103, ¶¶ 1-3 (*W. Colo. Motors I*). Park Meadows' complaint included two claims. First, as authorized by Title 12, Article 6, Part 1 of the Colorado Revised Statutes (the Dealer Act), Park Meadows "sought a stay of the relocation of Alpine, a hearing and a judgment as to the reasonableness of GM's approval of Alpine's relocation,

1

and a cease and desist order against GM and Alpine with respect to the proposed relocation." *W. Colo. Motors I*, ¶ 8.  Second, and in the alternative, it sought a declaratory judgment and order compelling the Executive Director to "'undertake a hearing or other activity' . . . to determine whether the proposed relocation of Alpine was reasonable or unreasonable under section 12-6-120.3[, C.R.S. 2014]." *Id.* at ¶ 9.[1]

¶ 3    The Executive Director, GM, and Alpine all moved to dismiss Park Meadows' first complaint for lack of subject matter jurisdiction.  Concluding that the complaint was tantamount to an appeal of the Executive Director's decision not to hold a hearing as to the reasonableness of the relocation, and noting that under section 12-6-120.3(4)(b)(II) "[t]he court of appeals has initial jurisdiction to review all final actions and orders that are subject to judicial review of the executive director," the district court granted the defendants' motions to dismiss.

---

[1] The controlling statutes have been relocated and substantially amended since 2014.  They are now codified at sections 44-20-101 to -142, C.R.S. 2018.

¶ 4    A division of this court affirmed, holding that the Executive Director's letter was a final agency action and that, by statute, "review of the Executive Director's decision fell within the court of appeals' exclusive jurisdiction." *W. Colo. Motors I,* ¶ 48. In addition, the division held that the district court lacked subject matter jurisdiction over Park Meadows' claim for equitable relief against GM and Alpine because the governing statute, section 12-6-120.3(4)(a), allowed Park Meadows to bring "an action or proceeding before the executive director *or* a court." *Id.* at ¶ 49. This disjunctive phrasing, the division concluded, meant that a dealer in Park Meadows' position could seek relief from the Executive Director or a state district court, but not both. *Id.* The division therefore held that, by opting to seek relief from the Executive Director first, Park Meadows stripped the district court of subject matter jurisdiction over any subsequent request for relief that the Executive Director was also empowered to grant. *Id.*

¶ 5    Park Meadows filed a petition for a writ of certiorari that the Colorado Supreme Court accepted and then, after the governing statute was substantially amended in 2017, dismissed as improvidently granted.

¶ 6     After the mandate was issued, and apparently having failed to prevent Alpine from moving into what it maintained was its territory, Park Meadows gave up on its claims for equitable relief. It instead filed a new lawsuit in district court — the instant case — naming GM as the only defendant. Park Meadows' new complaint seeks damages from GM under two theories: (1) enforcement under section 12-6-122(3), C.R.S. 2014, which Park Meadows asserts entitles it to compensation for all damages resulting from GM's allegedly unreasonable approval of Alpine's relocation (the statutory damages claim); and (2) breach of the dealership agreement between Park Meadows and GM.

¶ 7     By this time, however, more than three years had passed since GM first notified Park Meadows of Alpine's impending relocation. GM thus moved to dismiss both claims as time barred. *See* § 13-80-101(1)(a), C.R.S. 2018 (establishing three-year statute of limitations for breach of contract); § 13-80-102(1)(i), C.R.S. 2018 (establishing two-year statute of limitations for statutory damages claim).

¶ 8     Park Meadows responded by amending its complaint to assert that "[i]n accordance with the remedial revival statute,

4

§ 13-80-111[, C.R.S. 2018], Park Meadows filed this action on September 14, 2017, less than 90 days after the previous dismissal for lack of subject-matter jurisdiction." GM again moved to dismiss, and the district court granted the motion. In a detailed written order, the district court concluded that "[b]ecause the claim asserted in this litigation is for monetary damages not previously made and because of the findings of the Executive Director, . . . [s]ection 13-80-111 cannot serve to permit the Plaintiff to bring its statutory violation claim." As for Park Meadows' claim for breach of contract, the district court concluded that because "this claim was never brought in the original action filed in Denver[,] . . . [s]ection 13-80-111 cannot be used as a basis to permit this claim to be filed outside the statute of limitations."

¶ 9 Park Meadows now appeals, arguing that section 13-80-111 applies to both of its claims for relief, and that its new lawsuit against GM should therefore be deemed timely. We conclude that we need not consider whether Park Meadows' claim for statutory damages qualifies for revival under section 13-80-111 because we hold that *W. Colo. Motors I* — which neither party challenges — controls the disposition of Park Meadows' statutory claim. With

5

respect to the claim for breach of contract, we hold that section 13-80-111(1) does not apply because that claim is not "upon the same cause of action" as Park Meadows' original lawsuit. Although we acknowledge that the same event triggered both lawsuits, Park Meadows' claim for breach of contract did *not* arise from the same set of operative facts as its demand for relief under the Dealer Act. We thus affirm the district court's order dismissing Park Meadows' complaint.

## II. Standard of Review and Preservation

¶ 10 We review de novo a district court's dismissal of a complaint on statute of limitations grounds. *Harrison v. Pinnacol Assurance,* 107 P.3d 969, 971 (Colo. App. 2004). We also review de novo questions of statutory interpretation. *Roup v. Commercial Research, LLC*, 2015 CO 38, ¶ 8.

¶ 11 The parties agree, as do we, that Park Meadows preserved its argument that the remedial revival statute should apply to the instant complaint.

### III. The Disposition of Park Meadows' Statutory Claim is Controlled by *W. Colo. Motors I*

¶ 12    We first consider whether the district court should have applied section 13-80-111 to Park Meadows' request for statutory damages.  We conclude that because section 13-80-111 is not itself a source of subject matter jurisdiction, it cannot be employed to revive Park Meadows' statutory claim.

### A. Section 13-80-111

¶ 13    Section 13-80-111, titled "Commencement of a new action upon involuntary dismissal," states in relevant part as follows:

> (1) If an action is commenced within the period allowed by this article and is terminated because of lack of jurisdiction or improper venue, the plaintiff . . . may commence a new action upon the same cause of action within ninety days after the termination of the original action . . . and the defendant may interpose any defense, counterclaim, or setoff which might have been interposed in the original action.
>
> (2) This section shall be applicable to all actions which are first commenced in a federal court as well as those first commenced in the courts of Colorado or of any other state.

¶ 14    Although the scope varies from jurisdiction to jurisdiction, nearly every state has a similar statute.  Colorado's version has

been dubbed the "remedial revival statute," *Soehner v. Soehner*, 642 P.2d 27, 28 (Colo. App. 1981); courts in other states often refer to similar legislation as "savings" or "renewal" statutes, *see, e.g.,* *Gresham v. Harris*, 765 S.E.2d 400 (Ga. Ct. App. 2014) (renewal); *Ewing v. State Dep't of Transp.*, 235 P.3d 776 (Utah Ct. App. 2010) (savings). No matter what they are called, however, the general purpose of these statutes is the same — "to prevent minor or technical mistakes from precluding a plaintiff from obtaining his day in court and having his claim decided on the merits." *Furnald v. Hughes*, 804 N.W.2d 273, 276 (Iowa 2011).

¶ 15    When properly invoked, section 13-80-111(1) "tolls the running of the applicable statute of limitations when the original action has been terminated for lack of jurisdiction." *Nguyen v. Swedish Med. Ctr.*, 890 P.2d 255, 256 (Colo. App. 1995). The statute "reflects a legislative intent to enable litigants to avoid hardships which might result from strict adherence to the provisions of statutes of limitations" in cases where a litigant diligently pursues claims from the time that they are discovered. *Soehner*, 642 P.2d at 28. What section 13-80-111 does not do, however, is invite piecemeal litigation by a plaintiff that chooses to

parcel out its grievances in dribs and drabs.  Consistent with the principles of stability and finality underlying Colorado's statutes of limitations, the remedial revival statute cannot be used as a means for excusing a plaintiff's failure to diligently and timely prosecute known claims.

¶ 16     Remedial statutes "relate only to remedies or procedures" that are created to enforce substantive rights or liabilities.  *Vetten v. Indus. Claims Appeals Office*, 986 P.2d 983, 986 (Colo. App. 1999).  Remedial legislation "must 'be liberally construed to accomplish its object.'"  *Mishkin v. Young*, 198 P.3d 1269, 1273 (Colo. App. 2008) (quoting *Colo. & S. Ry. v. State R.R. Comm'n*, 54 Colo. 64, 77, 128 P. 506, 512 (1912)).  But we must still give "consistent, harmonious, and sensible effect" to every part of a statute, and strive to "avoid[] constructions that would . . . lead to illogical or absurd results." *Pineda-Liberato v. People*, 2017 CO 95, ¶ 22; *accord* 3 Norman Singer & Shambie Singer, Sutherland Statutory Construction § 60:1, Westlaw (7th ed. database updated Nov. 2018) ("Remedial statutes should not be construed so broadly as to create the possibility of results that are unreasonable, illogical or inconsistent with common sense.").

9

## B. Section 13-80-111 Cannot Be Used to Revive Nonjusticiable Claims

¶ 17    Park Meadows maintains that its statutory and contract claims both satisfy the remedial revival statute's requirements. In support, it points out that (1) its first lawsuit was timely; (2) it filed the instant complaint within ninety days of the issuance of the mandate; and (3) the division in *W. Colo. Motors I*, ¶ 49, held that "the district court properly granted the Executive Director's motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1)." GM does not dispute the timing of either lawsuit, nor does it question the previous division's conclusion that the district court lacked subject matter jurisdiction over either of Park Meadows' claims for relief in *W. Colo. Motors I*.

¶ 18    What Park Meadows overlooks is that statutes like section 13-80-111 only contemplate revival of an otherwise untimely lawsuit in instances where the previous dismissal for lack of subject matter jurisdiction arose from a *curable* defect. This occurs most often when a plaintiff mistakenly files a claim in federal court that asserts a question arising under state law and does not establish federal subject matter jurisdiction. *See, e.g., Phillips v. Beethe*, 679 P.2d

10

126, 127-28 (Colo. App. 1984) (applying remedial revival statute to medical malpractice claims dismissed from United States District Court for lack of subject matter jurisdiction). Section 13-80-111(1) accounts for this situation by permitting a plaintiff which finds itself in such a situation to file "a new action upon the same cause of action" in a court that has subject matter jurisdiction over the claims asserted.

¶ 19    But section 13-80-111 is not a means for skirting justiciability problems. To be sure, while the statute creates leeway for a plaintiff to fix and refile claims that have been dismissed for lack of subject matter jurisdiction, the mere act of refiling is not itself such a fix. Put another way, the remedial revival statute implicates only the statute of limitations — it has no effect on any other bounds of subject matter jurisdiction. "Although dismissal for lack of subject matter jurisdiction does not adjudicate the merits of the claims asserted, it does adjudicate the court's jurisdiction." *Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1103 (8th Cir. 2013); *see also Kulinski v. Medtronic Bio-Medicus, Inc.*, 112 F.3d 368, 373 (8th Cir. 1997) (dismissal of the plaintiff's complaint without prejudice for lack of subject matter jurisdiction would

11

prevent the plaintiff from bringing another claim on the same jurisdictional basis, although the plaintiff would remain free to bring "the same claim under a different theory and jurisdictional basis"); *Coffin v. Cottle,* 33 Mass. (16 Pick.) 383, 386 (1835) ("The proviso in the [Massachusetts] statute . . . declares that where the plaintiff has been defeated by some matter not affecting the merits, some defect or informality, *which he can remedy or avoid by a new process*, the statute shall not prevent him from doing so.") (emphasis added).

¶ 20    And this is where Park Meadows' statutory claim runs aground. The district court's lack of subject matter jurisdiction over its statutory claims — having been settled in *W. Colo. Motors I,* and going unchallenged here — cannot be remedied or avoided by a new process. In *W. Colo. Motors I,* ¶¶ 49-50, a division of this court held that by seeking a ruling on the reasonableness of GM's approval of Alpine's relocation from the Executive Director in the first instance, Park Meadows deprived the district court of subject matter jurisdiction over that claim. Yet despite the instant complaint's reliance on precisely the same alleged statutory violation — GM's ostensibly unreasonable approval of Alpine's

12

move, contrary to section 12-6-120.3(1.5) — Park Meadows does not contest *W. Colo. Motors I*'s jurisdictional analysis.

¶ 21    While Park Meadows emphasizes that it now seeks damages, rather than the injunctive relief it requested in *W. Colo. Motors I*, this is a distinction without a difference.  Regardless of the specific relief requested, any claim arising under section 12-6-120.3(1.5) must establish as a threshold matter that the manufacturer's approval of a "motor vehicle dealer facility initial site location or relocation request" was unreasonable.  Absent that showing, Park Meadows is not entitled to any relief under section 12-6-120.3(1.5).  But as *W. Colo. Motors I* held, Park Meadows' decision to seek relief from the Executive Director closed the jurisdictional door to the district court's consideration of the reasonableness of GM's decision.  Park Meadows does not ask us to revisit that jurisdictional analysis, and, in any event, we see no compelling reason to do so.  Consequently, because the defect in subject matter jurisdiction that led to the dismissal of Park Meadows' statutory claim cannot be cured by refiling, we hold that the remedial revival statute does not apply to that claim.

## IV. Application of the Remedial Revival Statute to Park Meadows' Claim for Breach of Contract

¶ 22    We next address Park Meadows' argument that the district court should have revived its claim for breach of contract because it was "upon the same cause of action" as its first complaint and otherwise satisfied the requirements of the remedial revival statute.

### A.    "Cause of Action" is Ambiguous

¶ 23    As relevant here, the remedial revival statute applies where (1) a timely filed lawsuit is terminated because of lack of jurisdiction or improper venue and (2) the plaintiff commences "a new action upon the same cause of action" within ninety days after the termination of the original action.  § 13-80-111(1).  While *W. Colo. Motors I* deprives the district court of subject matter jurisdiction over Park Meadows' statutory claims, it has no bearing on Park Meadows' claim for breach of contract.  All parties likewise agree that Park Meadows' first complaint was terminated for lack of jurisdiction and that it filed its new complaint within ninety days after the termination of that action.  The parties disagree, however, as to whether Park Meadows' new lawsuit is a "new action upon the same cause of action."  Accordingly, if the complaint is "upon the

14

same cause of action," the remedial revival statute applies. If it is not "upon the same cause of action," it is untimely.

¶ 24     Drawing largely on the Restatement (Second) of Judgments and case law construing the phrase for the purposes of claim preclusion, Park Meadows urges us to adopt a transactional view of "cause of action." Under this approach, a "cause of action" is "bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claims relies." *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 199 (Colo. 1999). GM counters with the Colorado Supreme Court's observation that the Restatement's "concept of a 'transaction, or series of connected transactions' is incapable of mathematical precision and instead contemplates a pragmatic standard, to be applied with attention to the facts of each case." *In re Greene*, 2013 CO 29, ¶ 10 (quoting Restatement (Second) of Judgments § 24 cmt. b (1982)). The facts and equities of this case, GM asserts, dictate that the claims in Park Meadows' latest lawsuit fall outside the bounds of the remedial revival statute.

¶ 25    Colorado adopted its first version of the remedial revival statute in 1868, repealed it in 1961, and then passed a slightly reworded version in 1971.  No version has defined "cause of action."

¶ 26    Legal dictionaries likewise offer little assistance.  Black's, for example, defines "cause of action" in three ways: "1. A group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person . . . 2. A legal theory of a lawsuit . . . 3. Loosely, a lawsuit."  *Black's Law Dictionary* 266-67 (10th ed. 2014).  Other sources are similarly equivocal.  *See, e.g.*, Bryan A. Garner, *Garner's Dictionary of Legal Usage* 142 (3d ed. 2011) (defining "cause of action" as "(1) a group of operative facts, such as a harmful act, giving rise to one or more rights of action; or (2) a legal claim").

¶ 27    Case law and treatises confirm the phrase's flexibility.  In 1933, the United States Supreme Court observed that

> [a] "cause of action" may mean one thing for one purpose and something different for another.  It may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of res judicata.

*United States v. Memphis Cotton Oil Co.*, 288 U.S. 62, 67-68 (1933) (footnote omitted). More contemporary sources concur. *See, e.g., Ieropoli v. AC&S Corp.*, 842 A.2d 919, 929-30 (Pa. 2004) ("[T]he phrase 'cause of action' . . . does not have a single definition, and means different things depending on context."); *see also* William D. Ferguson, *The Statutes of Limitations Savings Statutes* 164 (1978) ("[W]hen dealing with res judicata most courts have traditionally ascribed a broader meaning to the term than when dealing with the term in connection with pleading.").

¶ 28     We look first to the plain language of a statute to interpret it. But where, as in this case, the plain and ordinary meaning of the statute's language is ambiguous (i.e., it is capable of alternative reasonable constructions or its intended scope is unclear), we may employ various tools to discern legislative intent. We do so below.

¶ 29     Statutory limitation periods "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944). "The theory is that even if one has a just claim it is unjust not to put the adversary on

17

notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* at 349. "By penalizing unreasonable delay, statutes of limitation compel litigants to pursue their claims in a timely manner." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996).

¶ 30     But because time bars can be both harsh and subject to manipulation, remedial exceptions abound. Courts will equitably toll a statute of limitations in cases where fundamental fairness demands it. *See, e.g., Garrett v. Arrowhead Improvement Ass'n*, 826 P.2d 850, 854-55 (Colo. 1992). And the General Assembly has adopted various statutory tolling provisions intended to ensure that claimants are not unreasonably deprived of their day in court. *See, e.g.*, § 13-80-106(2), C.R.S. 2018 (extending statute of limitations for product liability actions for minors and those who are "mentally incompetent, imprisoned, or absent from the United States at the time the cause of action accrues and [are] without spouse or natural or legal guardian"); § 13-80-118, C.R.S. 2018 (tolling statute of limitations for period that potential defendant "is out of

18

this state and not subject to service of process or has concealed himself").

¶ 31    Colorado's remedial revival statute is one such provision. As noted above, it reflects the General Assembly's intent "to enable litigants to avoid hardships which might result from strict adherence to the provisions of statutes of limitations." *Soehner*, 642 P.2d at 28. It is a backstop intended to ensure that cases are decided on the merits — at least in situations where plaintiffs have pursued their claims diligently and defendants had knowledge of those claims. *Sharp Bros. Contracting Co. v. Westvaco Corp.*, 817 P.2d 547, 551 (Colo. App. 1991).

## B.    Application

¶ 32    However variable the historical meaning of "cause of action" may be, one thing is clear: section 13-80-111 is a remedial statute and should therefore be construed liberally to effectuate its purpose. *Id.* Courts interpreting similar legislation in other states thus generally recognize that "the form of the action is not dispositive," *Kulinski v. Medtronic Bio-Medicus, Inc.*, 577 N.W.2d 499, 504 (Minn. 1998), and that good-faith filing mistakes will not

19

bar otherwise untimely revival of a dismissed complaint, *see, e.g.,*
*Pringle v. Kramer,* 40 So. 3d 516, 519 (Miss. 2010).

¶ 33     But a liberal construction is not an unlimited one.  As one
influential case put it, the key to applying statutes such as section
13-80-111 is determining whether "by invoking judicial aid [in the
original action], a litigant [has] give[n] timely notice to his adversary
of a present purpose to maintain his rights before the courts."
*Gaines v. City of New York,* 109 N.E. 594, 596 (N.Y. 1915).  This
statement contemplates two conditions: diligence by the plaintiff
and notice to the defendant, both of which are critical to ensuring
that claims are timely and fairly heard.  Ensuring that the remedial
revival statute is not invoked by a plaintiff who has slept on its
rights — or against a defendant who has thus not received timely
notice of the nature of the claims against it — will prevent section
13-80-111 from "swallow[ing] entirely the ordinary restrictions of a
statute of limitation."  *Furnald,* 804 N.W.2d at 276.

¶ 34     To that end, the remedy created by statutes like section 13-80-
111 is, as the Iowa Supreme Court put it in *Furnald,* "narrow and
sharp, not broad and blunt."  *Id.* at 283.  We agree with this view
and hold that section 13-80-111 should be applied only where

20

(1) plaintiffs have pursued their claims diligently and (2) defendants had knowledge of the claims. *Sharp Bros.*, 817 P.2d at 551. While we construe "cause of action" broadly, as is appropriate for a remedial statute, we conclude that Park Meadows' contract claim satisfies neither of these elements.

¶ 35    We first reject Park Meadows' assertion that it demonstrated diligence merely by filing its new lawsuit within ninety days after the dismissal of its first complaint became final. The policies underpinning Colorado's statutes of limitation demand more. A cause of action for breach of contract accrues "on the date the breach is discovered or should have been discovered *by the exercise of reasonable diligence.*" § 13-80-108(6), C.R.S. 2018 (emphasis added). The record establishes that Park Meadows was fully aware of the contractual implications of GM's actions by the time it filed its administrative complaint with the Executive Director. Yet rather than asserting breach of contract in the first complaint that it filed in the district court — or even filing an entirely new, timely complaint and having it stayed pending the outcome of its statutory claim — Park Meadows waited more than three years after the alleged breach to seek judicial relief. Under these circumstances,

we conclude that Park Meadows did not demonstrate the diligence necessary to revive its claim for breach of contract.

¶ 36     We also reject Park Meadows' argument that its claim for breach of contract was "upon the same cause of action" as its original complaint, which, as we have discussed above, sought only statutorily authorized injunctive relief.  The substantial differences between the two complaints — and what GM might reasonably be expected to do when addressing them — lend support to this conclusion.[2]  Most important is that Park Meadows' complaint in *W. Colo. Motors I* relied exclusively on GM's alleged violation of the Dealer Act.  It did not even mention the dealership agreement, much less allege that GM had violated it.  Instead, Park Meadows asserted that "GM's approval of the relocation of Alpine was unreasonable as it infringed upon Plaintiff's '[r]elevant market area' and established a new dealer in an area that is adequately serviced by Plaintiff with high consumer satisfaction for sales and service,"

---

[2] Although it is not in the record before us, we take judicial notice of Park Meadows' complaint in *W. Colo Motors I*.  *See* CRE 201(f) ("Judicial notice may be taken at any stage of the proceeding."); *Vento v. Colo. Nat'l Bank*, 985 P.2d 48, 52 (Colo. App. 1999) (a court may take judicial notice of the contents of court records in a related proceeding).

22

and that "[i]f the relocation is allowed to proceed before this Court has the opportunity to consider the reasonableness of the relocation, Plaintiff will be prejudiced without being afforded the rights granted to it by C.R.S. § 12-6-120.3."

¶ 37  In contrast, Park Meadows' amended complaint in the instant case dedicates ten paragraphs to GM's alleged breach of contract but cites to just a few provisions of the dealership agreement, which also is not in the record before us.  For instance, Park Meadows alleges the dealership agreement obligates GM to "service General Motors Products competitively and to permit each dealer the opportunity to achieve a reasonable return on investment if it fulfills its obligations[.]"  Additionally, Park Meadows alleges that Michigan law governs disputes concerning the dealership agreement.  That contention was not raised on appeal, but it underscores how, from a defendant's perspective, these two claims are distinct.

¶ 38  While the circumstances surrounding the execution, terms, and duration of the dealership agreement could be highly germane to a claim for breach of contract, that type of evidence has no apparent relevance under section 12-6-120.3(4)(a) — which

23

precisely outlines the burden and nature of proof in a proceeding filed under the Dealer Act. We thus conclude that GM could not have reasonably been expected to infer from Park Meadows' claim for statutory relief that it should also secure and preserve evidence related to its dealership agreement, much less hold on to that evidence for years while Park Meadows' statutory claim wound its way through the courts.

## V. Claim Preclusion

¶ 39    Because we affirm the district court's ruling on the grounds discussed above, we need not address Park Meadows' contention that the district court erroneously found that it was barred by the doctrine of claim preclusion.

## VI. Conclusion

¶ 40    We affirm the district court's dismissal of the complaint.

JUDGE TERRY concurs.

JUDGE J. JONES specially concurs.

J. JONES, J., specially concurring.

¶ 41 I agree completely with the majority's analysis and therefore join in its opinion in full. I write separately, however, to encourage the General Assembly to clarify when section 13-80-111, C.R.S. 2018, does, or does not, apply.

¶ 42 As the majority notes, except for a ten-year period between 1961 and 1971, a version of this ambiguous statute has been on the books since 1868. Its origins are relatively ancient, and we don't have any legislative history to go on when deciding how, if at all, it applies in a particular case. Because of this, I see a real possibility that its original meaning has been lost to time. And because of that, Colorado courts will continue to struggle with cases in which a party invokes it. Courts and practitioners could only benefit from some legislative clarification that accounts for current legal practices.