24CA1762 Coronado-Arrascue v Roman Catholic 11-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1762
El Paso County District Court No. 23CV32252
Honorable David Prince, Judge

Ricardo Coronado-Arrascue

Plaintiff-Appellant,

v.

The Roman Catholic Diocese of Colorado Springs,

Defendant-Appellee.

ORDER AFFIRMED AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

Baker Law Group, PLLC, Joseph A. O'Keefe, Colorado Springs, Colorado, for
Plaintiff-Appellant

Taft Stettinius & Hollister, Richard F. Bednarski, John T. Melcon, Colorado
Springs, Colorado, for Defendant-Appellee

¶ 1 Plaintiff, Monsignor Ricardo Coronado-Arrascue, appeals an order awarding attorney fees and costs to defendant, the Roman Catholic Diocese of Colorado Springs (the Diocese). We affirm the order and remand the case to the district court.

## I. Background

¶ 2 In January 2022, Coronado-Arrascue and the Diocese entered into an agreement (Settlement Agreement) in which Coronado-Arrascue agreed to resign from his employment with the Diocese in exchange for compensation and retaining his status as a "priest in good standing" with the Diocese. Under the Settlement Agreement, the parties mutually agreed to refrain from making disparaging or defamatory comments about each other to third parties concerning "the matters released under this [Settlement] Agreement." The parties also agreed to release each other from liability related to Coronado-Arrascue's employment with the Diocese, including future attorney fees and costs related to claims arising from his employment. However, the Settlement Agreement also included a fee-shifting provision that said if litigation was brought to enforce the Settlement Agreement, the prevailing party would be entitled to reasonable attorney fees and costs incurred.

1

¶ 3        In June 2023, the Diocese issued a "Precept"[1] that suspended Coronado-Arrascue from presenting himself as a priest within the Diocese and issued a letter to its clergy members advising them of the Precept.

¶ 4        Several months later, Coronado-Arrascue filed a complaint against the Diocese, alleging that the Precept defamed him and breached the Settlement Agreement.  Coronado-Arrascue asserted claims for breach of contract, libel, intentional interference with contractual obligations, and extreme and outrageous conduct.

¶ 5        The Diocese filed a C.R.C.P. 12(b)(5) motion to dismiss Coronado-Arrascue's complaint for failure to state a claim, asserting that his claims were barred by the church autonomy doctrine.  That doctrine "prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity."  *Jones v. Crestview S. Baptist Church*, 192 P.3d 571, 572 (Colo. App. 2008) (quoting *Bryce v. Episcopal Church*, 289 F.3d 648, 655 (10th Cir. 2002)).  The court agreed, granted the

---

[1] A "precept" is a "command or principle intended especially as a general rule of action."  Merriam-Webster Dictionary, https://perma.cc/C9BX-2MVL.

Diocese's motion, and dismissed Coronado-Arrascue's complaint. Coronado-Arrascue didn't appeal the court's dismissal order.

¶ 6 The Diocese later filed a motion for attorney fees and costs, seeking $16,020 in attorney fees and $120 in costs. As relevant here, the Diocese argued that it was entitled to its fees and costs for essentially two reasons: (1) section 13-17-201, C.R.S. 2025, and section 13-16-113(2), C.R.S. 2025, each mandated an award of attorney fees and costs because Coronado-Arrascue's claims predominately sounded in tort; and (2) the fee-shifting provision of the Settlement Agreement applied because the Diocese prevailed on its motion to dismiss. The court didn't immediately rule on the Diocese's motion.

¶ 7 Meanwhile, Coronado-Arrascue filed the following motions, all related to the court's dismissal order: (1) a motion to reconsider; (2) a supplemental motion to reconsider; (3) a motion for relief from judgment under C.R.C.P. 60; and (4) a motion to amend his

complaint to add "all responsible parties" to the litigation.[2]
Following briefing, the court denied Coronado-Arrascue's requests
for reconsideration of the dismissal order and for relief from
judgment. Coronado-Arrascue didn't appeal either order.

¶ 8    The Diocese then supplemented its fee motion to include the
fees and costs it incurred addressing Coronado-Arrascue's
additional motions. In its supplemental motion, the Diocese sought
a total of $29,555 in reasonable attorney fees and $264 in costs.

¶ 9    In a written order issued in May 2024, the court granted the
Diocese's motion. The court found that because
Coronado-Arrascue chose to present the case as "primarily a tort
action rather than just a contract case," an award of fees and costs
was statutorily mandated by sections 13-17-201 and 13-16-113(2).
The court also found that the church autonomy doctrine didn't bar
enforcement of the Settlement Agreement as to fees and costs

---

[2] Coronado-Arrascue conceded that he was barred from amending
his complaint in the reply brief to his motion to amend and thus
withdrew that request. He then filed a separate action against the
Diocese's Bishop and Vicar General in El Paso County Case No.
24CV30702, the dismissal of which was affirmed by a division of
this court. *See Coronado-Arrascue v. Golka,* (Colo. App. No.
24CA1542, June 5, 2025) (not published pursuant to C.A.R. 35(e)).

because determining whether the fee-shifting provision applied didn't require the court to delve into "issues of church governance, faith, or doctrine." The court then concluded that under the fee-shifting language in the parties' Settlement Agreement, the Diocese was entitled to an award of fees and costs as the prevailing party.

¶ 10    Although the court found that the Diocese was entitled to its fees and costs, the court granted Coronado-Arrascue a hearing to dispute their reasonableness and permitted the Diocese to supplement its request to address any additional fees and costs incurred leading up to and through the resolution of the hearing.

¶ 11    Before the hearing, the Diocese supplemented its request for attorney fees and costs to include the additional fees and costs it had incurred in preparation for the hearing, as well as those it anticipated it would incur by participating in the hearing.

¶ 12    The parties appeared for the fee hearing five months later. However, the court vacated the fee hearing on the record after Coronado-Arrascue's counsel failed to present any argument regarding the requested fees and costs. The court further denied as untimely Coronado-Arrascue's oral request to reconsider its May

2024 order granting the Diocese's fees and costs. The same day, the court issued a written order awarding to the Diocese $32,480 in attorney fees and $360 in costs.

¶ 13    Coronado-Arrascue appeals.

## II.    Analysis

¶ 14    On appeal, Coronado-Arrascue doesn't challenge the reasonableness of the amount of fees and costs awarded. Instead, he challenges the court's fees and costs award on two bases. First, he contends that the court lacked subject matter jurisdiction to enter the award. In support of this contention, he reasons that because the court determined that the church autonomy doctrine divested it of subject matter jurisdiction to consider the substance of his claims, it follows that the church autonomy doctrine also divested the court of subject matter jurisdiction to consider the Diocese's request for an award of fees and costs. Second, Coronado-Arrascue contends that resolving the Diocese's request for fees and costs would require the court to become "excessively entangled" with religion in violation of the church autonomy doctrine. We reject both contentions.

## A.    Preservation

¶ 15    The Diocese asserts that Coronado-Arrascue failed to preserve[3] his argument that the church autonomy doctrine deprived the court of subject matter jurisdiction to award fees and costs on a statutory basis.

¶ 16    We agree that Coronado-Arrascue didn't raise this specific argument in the district court.  In his response to the Diocese's motion and supplement for fees and costs, Coronado-Arrascue argued against the imposition of statutory fees and costs on the basis that his claims didn't sound in tort and that the court misapplied the church autonomy doctrine with respect to the fee-shifting provisions of the Settlement Agreement.

¶ 17    However, because a lack of subject matter jurisdiction implicates a court's power to hear a case or enter judgment, *Currier v. Sutherland*, 218 P.3d 709, 714 (Colo. 2009), the issue of whether

---

[3] Coronado-Arrascue also argues that the fees and costs award should be vacated based on the *Noerr-Pennington* doctrine.  *See Boyer v. Health Grades, Inc.*, 2015 CO 40, ¶ 9 (noting that the *Noerr-Pennington* doctrine immunizes a petitioner from legal liability for exercising their constitutional right to petition the government, subject to certain limitations).  But Coronado-Arrascue didn't raise this argument in the district court.  Thus, this argument is unpreserved, and we decline to address it.

7

a court lacked subject matter jurisdiction isn't waivable and may be raised at any time, including for the first time on appeal. *BDG Int'l, Inc. v. Bowers*, 2013 COA 52, ¶ 10.

¶ 18 The Diocese also asserts that we shouldn't address Coronado-Arrascue's "excessive entanglement with religion" argument because, at best, that argument is only preserved as to the court's award of fees and costs based on the fee-shifting provision of the Settlement Agreement, and isn't preserved with respect to the court's award under the statutory mandates.

¶ 19 Coronado-Arrascue's excessive entanglement argument concerns a portion of the court's fees and costs order in which the court speculates about why he pleaded his claims the way that he did. Specifically, Coronado-Arrascue argues in his opening brief that "all of [the court's] delving into the reasoning behind how [he] chose to frame his claims raised the risk of excessive entanglement." But that portion of the court's order is dictum, and we need not and do not consider it in determining whether Coronado-Arrascue's claims sound in tort. And because Coronado-Arrascue's general argument that his claims didn't sound in tort is preserved, we address it below.

## B. Standard of Review and Applicable Law

¶ 20    A court's subject matter jurisdiction concerns its authority to deal with the class of cases in which it renders judgment, not its authority to enter a particular judgment within that class. *Meggitt v. Stross*, 2021 COA 50, ¶ 39. "In determining whether a particular court has jurisdiction, we consider the nature of the party's claim and the relief sought." *Black v. Black*, 2018 COA 7, ¶ 75. We review the legal issue of jurisdiction de novo. *In re Estate of Murphy*, 195 P.3d 1147, 1150 (Colo. App. 2008).

¶ 21    Additionally, whether a statute mandates an award of attorney fees or costs is a question of statutory interpretation we review de novo. *Crandall v. City of Denver*, 238 P.3d 659, 661 (Colo. 2010).

¶ 22    When a district court dismisses a plaintiff's tort action under C.R.C.P. 12(b), an award of attorney fees to a prevailing defendant is mandatory under section 13-17-201(1). *Luskin Daughters 1996 Tr. v. Young*, 2019 CO 74, ¶ 22. Section 13-16-113(2) is a companion statute that mandates an award of costs under the same circumstances. *Crandall*, 238 P.3d at 663. To determine whether an action lies in tort, we look to the manner in which the claims are pleaded, *Luskin*, ¶ 22, relying on the plaintiff's

characterization of the claims and not "what should or might have been pleaded," *Castro v. Lintz*, 2014 COA 91, ¶ 16. "Where a plaintiff has pleaded both tort and non-tort claims, the question of statutory attorney fees properly turns on the question 'whether the essence of the action was one in tort.'" *Luskin*, ¶ 22 (quoting *Castro*, ¶ 16).

## C. The Court Had Subject Matter Jurisdiction to Award Attorney Fees and Costs

¶ 23 Coronado-Arrascue argues that the district court "erred as a matter of law in determining that the Diocese was entitled to attorney fees even though it had already determined that it lacked jurisdiction to hear [his] underlying claims pursuant to the church autonomy doctrine." In support of this argument, he asserts that the "constitutional dimension of the church autonomy doctrine is categorically different from the more procedural dimensions of an ordinary finding of lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1)."

¶ 24 But Colorado's district courts have original jurisdiction in civil cases such as this one. Colo. Const. art. VI, § 9. And Coronado-Arrascue's argument mischaracterizes the nature of a

dismissal based on the church autonomy doctrine. As the Supreme Court has concluded, the church autonomy doctrine operates as an affirmative defense on the merits, not as a jurisdictional bar. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. Equal Emp. Opportunity Comm'n*, 565 U.S. 171, 195 n.4 (2012); *see also Bryce*, 289 F.3d at 654 (interpreting the church autonomy doctrine as a "defense" that results in a plaintiff having "no claim for which relief may be granted").

¶ 25 The district court's determination that the church autonomy doctrine applied therefore didn't, as Coronado-Arrascue asserts, divest it of subject matter jurisdiction to assess his civil claims. Rather, the court's determination that the doctrine applied served as an appropriate basis on which the court could grant the Diocese's motion to dismiss Coronado-Arrascue's complaint under Rule 12(b)(5). *Compare Barry v. Bally Gaming, Inc.*, 2013 COA 176, ¶ 8 ("In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to C.R.C.P. 12(b)(1), a district court examines the substance of the claim based on the facts alleged and the relief requested."), *with Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 858 (Colo. App. 2007) ("The purpose of C.R.C.P. 12(b)(5)

is to test the legal sufficiency of the complaint to determine whether the plaintiff has asserted a claim or claims upon which relief can be granted.").

¶ 26    In any event, Coronado-Arrascue's argument also fails because the unambiguous language of section 13-17-201 and section 13-16-113(2) provides that an award of fees and costs is mandatory regardless of whether a complaint was dismissed for failure to state a claim or for lack of subject matter jurisdiction. *See Crandall*, 238 P.3d at 663.

¶ 27    And to the extent Coronado-Arrascue asks us to revisit the merits of the final judgment dismissing his complaint or otherwise challenges the manner in which his complaint was dismissed, we decline to do so.  He didn't timely appeal the court's dismissal order, the court's order denying reconsideration, or the court's order denying relief from judgment, so we have no jurisdiction to review those orders.  *See Martinez v. LHM Corp., TCD*, 2020 COA 53M, ¶ 15 ("Failure to timely file a notice of appeal deprives an appellate court of jurisdiction and precludes any review of the merits."), *aff'd on other grounds*, 2021 CO 78.

¶ 28    Accordingly, we conclude the court had subject matter jurisdiction to award attorney fees and costs to the Diocese as mandated by statute.[4]

### D.    The Court Didn't Risk "Excessive Entanglement" by Awarding the Diocese Fees and Costs

¶ 29    Coronado-Arrascue argues that, because the issue of fees and costs was "inextricably intertwined" with the basis for the court's dismissal order, the court risked "excessive entanglement" with religion under the First Amendment by considering whether his claims were pleaded as torts in order determine whether the Diocese was entitled to statutorily mandated fees and costs. We aren't persuaded for two reasons.

¶ 30    First, while "excessive entanglement" of the government with religion is constitutionally impermissible under the First Amendment, *Van Osdol v. Vogt*, 908 P.2d 1122, 1132 (Colo. 1996),

---

[4] We therefore decline to address Coronado-Arrascue's alternative argument that the church autonomy doctrine divested the court of subject matter jurisdiction to award the Diocese its attorney fees and costs under the fee-shifting provision in the Settlement Agreement. *See, e.g., W. Colo. Motors, LLC v. Gen. Motors, LLC*, 2019 COA 77, ¶ 39 (declining to address appellant's alternative argument when affirming the district court's decision on another basis).

a court's consideration of attorney fees and costs is collateral to its determination of the merits of a case, *see Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 31 ("[A]n award of attorney fees is distinct and separately appealable from the judgment on the merits." (quoting *Kennedy v. Gillam Dev. Corp.*, 80 P.3d 927, 929 (Colo. App. 2003))).  This is because "[s]uch an award does not remedy the injury giving rise to the action, and indeed is often available to the party defending against the action."  *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 15 (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988)).  So, regardless of the court's decision on the merits of Coronado-Arrascue's claims, its assessment of whether there was a basis to award the Diocese its fees and costs was a separate determination.

¶ 31　　Second, it wasn't necessary, as Coronado-Arrascue claims, for the court to "probe internal ecclesiastical matters" to determine whether there was a basis to award fees and costs.  Rather, the court was only required to examine the face of his complaint to determine whether the substance of Coronado-Arrascue's claims were pleaded in tort.  *See Luskin*, ¶ 22.  And while the court's order contained some speculative dicta, the substance of its order was

14

premised on its assessment of the facial allegations in the complaint.

¶ 32    Coronado-Arrascue's complaint alleged that the Diocese made false and libelous statements by issuing the Precept and sending the letter to its clergy, that the statements were defamatory and made with reckless disregard for the truth, and that the Diocese interfered with the renewal of his employment in another diocese. Coronado-Arrascue further asserted that the Precept and letter to the Diocese's clergy breached the Settlement Agreement.

¶ 33    Coronado-Arrascue pleaded four tort claims based on these allegations — libel per se, libel per quod, intentional interference with contractual obligations, and extreme and outrageous conduct. *See Denv. Publ'g Co. v. Bueno*, 54 P.3d 893, 898-99 (Colo. 2002) (defamation by libel per se and libel per quod are torts); *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1120 (Colo. 1990) (intentional interference with contract is a tort); *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 664 (Colo. 1999) (intentional infliction of emotional distress by outrageous conduct is a tort). Coronado-Arrascue also pleaded one breach of contract claim,

15

which arose out the same nucleus of facts — that the Diocese made defamatory statements about him to its clergy.

¶ 34    And Coronado-Arrascue chose to include these claims "to obtain relief beyond what was available solely under a breach of contract theory." *Dubray v. Intertribal Bison Coop.*, 192 P.3d 604, 607 (Colo. App. 2008); *see also Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 997 (Colo. App. 2011) (court didn't err in determining that section 13-17-201 applied where plaintiff pleaded four contract and four tort claims but chose to include the tort claims to obtain relief beyond what would be available under a breach of contract theory).

¶ 35    Accordingly, the court didn't err in concluding that Coronado-Arrascue's claims primarily sounded in tort such that the Diocese was entitled to an award of statutorily mandated attorney fees and costs after the court dismissed Coronado-Arrascue's claims.[5]

---

[5] Because we resolve the Diocese's entitlement to fees on this basis, we need not address its entitlement under the Settlement Agreement.

## III. Appellate Fees and Costs

¶ 36 The Diocese seeks its appellate attorney fees and costs. Because the Diocese is the prevailing party on appeal, it is entitled to an award of attorney fees and costs incurred on appeal. *See Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006) ("When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and costs for successfully defending the appeal."). We remand this matter to the district court to determine and award the Diocese its reasonable appellate attorney fees and costs under C.A.R. 39.1 and C.A.R. 39(c)(1).

## IV. Disposition

¶ 37 The order is affirmed, and the case is remanded to the district court to determine and award to the Diocese its reasonable attorney fees and costs incurred on appeal.

JUDGE J. JONES and JUDGE KUHN concur.

17